402 So.2d 325 (1981)
Michael HENDERSON
v.
STATE of Mississippi.
No. 52679.
Supreme Court of Mississippi.
July 22, 1981.
Rehearing Denied September 2, 1980.
W.E. McLellan, III, Jackson, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, LEE and HAWKINS, JJ.
LEE, Justice, for the Court:
Michael Henderson and two (2) other individuals were indicted in the Circuit Court of Madison County for armed robbery. A severance was granted, Henderson was tried and convicted and sentenced to forty-one (41) years with the Mississippi Department of Corrections. He has appealed and assigns two (2) errors in the trial below.
Evidence for the State reflects that the Safe Chief No. 6, a Texaco station located in Madison County, was robbed about 12:15 a.m. on January 13, 1980. The attendant of the station at the time was Billy Walker and the robbery occurred a short time after his co-employee Louis Coleman had gone *326 for the night. Prior thereto, about 10:00 p.m., Henderson and a companion came to the station and asked Billy Walker for a gasoline can, stating that they had run out of gas down the road. Walker had no can to loan them, they left and returned about 10:45, asking for a pair of jumper cables, which the station attendant did not provide.
Henderson and his companion were still at the station when Louis Coleman left, and shortly thereafter, Henderson came inside the station brandishing a revolver. He fired a shot, missing Walker by about two feet. Walker began trying to open the safe by working the combination. Henderson fired another shot into the cooler and then struck Walker on the head with the revolver. Walker finally opened the safe and the robbers fled, taking approximately twenty-five hundred dollars ($2,500), jumped into a waiting automobile, and sped away.
While the robbery was in progress, off-duty Deputy Sheriff Jay Ledbetter of Madison County passed the station and noticed lights on and activity inside. He knew that the station closed at midnight. Ledbetter drove through the station for a closer look, heard what sounded to be a gun shot, then drove across the street from which vantage point he observed the scene. He dispatched a female companion to a nearby restaurant with instructions to call the local police. When the robbers ran out of the station, he pursued them in his vehicle and after a short while, placed blue lights on the dashboard and activated them. The fleeing car came to a stop and as Ledbetter emerged from his vehicle, a person in the other automobile jumped out and fired twice at him. He returned the fire, striking the vehicle several times, before it sped away. Ledbetter followed but was unable to overtake the car. Shortly afterward, Deputy Sheriff Eddie Clark of Madison County discovered the car, a 4-door two-tone Buick 225, stuck in the front yard of a Rev. Tarpley. Later, Deputy Sheriff Ledbetter and Officer Tim Hutson arrived, made a visual search of the automobile, and moved it to a storage garage.
The next day, appellant appeared at the Jackson City police station, and reported that his automobile, the vehicle found by the officers abandoned in Rev. Tarpley's yard, had been stolen a short while prior to the robbery the night before. He was arrested, but denied any connection with the robbery, claiming an alibi. Appellant was positively identified by Billy Walker and another attendant as having been in the station prior to the robbery and as one of the participants in the robbery. Appellant does not contradict the facts of the robbery.

I.
Did the lower court err in admitting at trial articles seized after a warrantless search of appellant's automobile?
At trial, the State called as witnesses Deputy Sheriff Eddie Clark and Frank McCann, a technician with the Mississippi Crime Laboratory, who testified outside the presence of the jury that on the morning after the robbery, they went to the storage garage where appellant's automobile was located and searched same. The search showed a lady's blue wallet on the front seat, several Miller beer cans, paper sacks, money wrappers and loose coins scattered about the floorboard, and a license tag and a .38 revolver under the seat on the passenger's side. McCann observed four (4) bullet holes in the rear of appellant's automobile and removed one bullet from the rubber guard around the rear bumper. Counsel for appellant objected to the introduction of this evidence on the ground that the search without a warrant was unlawful.
The court sustained the objection and thereupon the State called Officer Tim Hutson to the stand. Hutson testified that when he arrived upon the scene of the abandoned vehicle the night of the robbery, the front door was open, and in plain view, he saw a lady's blue wallet on the front seat, two (2) Miller beer cans on the left rear floorboard, some paper sacks, money wrappers and loose coins on the floorboard *327 on the right side.[1] He looked inside the vehicle and saw underneath the seat on the passenger's side a license tag and a.38 pistol. According to Hutson, the handle of the .38 pistol was sticking out from under the seat and he looked under the seat and saw the tag. Upon this testimony, the trial judge admitted the articles found upon the search by Clark and McCann the next morning at the storage garage, apparently under the "plain view doctrine."
Under the facts, at the time the automobile was discovered, and when the three officers looked into the vehicle, there was probable cause to search it. The vehicle having been abandoned, the officers had the responsibility and duty, knowing that a robbery felony had been committed and that the vehicle was involved in the crime, to remove it from that point and protect and preserve it and its contents for evidence. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), discussing a similar question, the United States Supreme Court said:
"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. The same consequences may not follow where there is unforeseeable cause to search a house. Compare Vale v. Louisiana, ante [399 U.S.] p. 30 [90 S.Ct. 1969, 26 L.Ed.2d 409]. But as Carroll, supra [Carroll v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543], held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars." 399 U.S. at 52, 90 S.Ct. at 1981-1982, 26 L.Ed.2d at 428-29.
After Chambers, the Court decided Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), and relying on Chambers, said:
"In Chambers v. Maroney we held that police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. There, as here, `[t]he probable-cause factor' that developed at the scene `still obtained at the station house.' 399 U.S., at 52, 90 S.Ct., at 1981. The Court of Criminal Appeals erroneously excluded the evidence seized from the search at the station house in light of the trial judge's finding, undisturbed by the appellate court, that there was probable cause to search respondent's car." 423 U.S. at 68, 96 S.Ct. at 305, 46 L.Ed.2d at 211-12.
Prior to Chambers, our Court decided Nobles v. State, 241 So.2d 826 (Miss. 1970), and wrote the following:
"Assuming that the defendant had standing to object to the search of the automobile under the ruling of the Supreme Court in United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and other cases, nevertheless, under the facts in this case, we are of the opinion that the officers were authorized to search the automobile found parked near the scene of the crime for the following reasons.
The officer knew that a felony had been committed. He was in hot pursuit of the felons who had fled the scene of the crime. He was authorized to go in houses and even break doors in an effort to capture the felons. Section 2471, Mississippi Code 1942 Annotated (1956); Love v. State, 142 Miss. 602, 107 So. 667 (1926). He found various items of evidence *328 as he followed the trail of the escapees. He found a pistol at a window of the burglarized building, and along the way he found silver coins, human tracks and an abandoned automobile. The `exigencies of the situation' were such that the officers were confronted not only with armed escapees, but also were confronted with the duty to prevent the escape by automobile or otherwise, thus authorizing the officer to seize the automobile where he had probable cause to believe the automobile was the `get-away car' or means of escape. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). An emergency existed and obviously the search of the automobile was not unreasonable under the circumstances. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).
Moreover, the visible evidence seized by the officers required no search warrant. The officer testified that when he discovered the automobile near the scene of the crime he could see pistols and whiskey in the automobile. We hold that this evidence was sufficient for the officer to seize the keys to the automobile and to search for weapons and other evidence tending to identify the owner of the automobile.
We have for many years adhered to the rule that when an officer obtained information by means of the eye (when he was not trespassing at the time) the information was not obtained by an illegal search. One does not violate the constitutional right of privacy of an individual by simply looking at that which is openly visible. Craft v. State, 254 Miss. 413, 181 So.2d 140 (1965); Wilson v. State, 186 So.2d 208 (Miss. 1966); McCollum v. State, 197 So.2d 252 (Miss. 1967)." 241 So.2d at 828-829.
Although the trial judge did not specifically state upon what basis he admitted the evidence obtained from the search, we are of the opinion that, under the facts and law of this case, without considering the plain-view doctrine or the right of officers to make an inventory of contents in an automobile, the search was lawful, and the lower court did not err in admitting the articles in evidence.[2]

II.
Did the lower court err in sentencing appellant to forty-one (41) years in the custody of the Mississippi Department of Corrections?
The armed robbery statute provides that upon conviction, the accused may be sentenced to life imprisonment if the jury fixes the sentence, and from three (3) years to a period less than life if the accused is sentenced by the judge. Appellant contends that his sentence of 41 years amounted to a life sentence and the cause should be remanded for proper sentencing.
In Stewart v. State, 372 So.2d 257 (Miss. 1979), the Court said:
"The statute before us places the imposition of a life sentence within the sole province of the jury and, in our opinion, no such sentence can be imposed by a judge unless he has the authority from the jury so to do. The statute presupposes, absent a jury recommendation of life imprisonment, that the judge will sentence the defendant to a definite term reasonably expected to be less than life. We therefore affirm and remand for proper sentence. (Emphasis Supplied). (322 So.2d at 753 [Lee v. State, 322 So.2d 751 (Miss.)])." 372 So.2d at 258.
The trial judge, prior to sentencing appellant, stated that the life expectancy for a 22-year-old person is 41.6 years. The courts may take judicial notice of mortality tables. We note that the most recent mortality table of Metropolitan Life Insurance Company (1980) and the most recent government table issued by the United States Department of Commerce (1980) indicate that *329 the life expectancy for a black male twenty-two (22) years old is 45.7 years. While the mortality tables are used only as guides in determining life expectancy, those tables along with the absence in the record of any physical impairment or illness of the appellant, must have convinced the trial judge that a 41-year sentence was reasonably expected to be less than the life expectancy of the appellant. If the sentence complies with that standard, regardless of how many years less than appellant's life expectancy the sentence is, it is within the statute and follows Yazzie v. State, 366 So.2d 240 (Miss. 1979); Ellis v. State, 326 So.2d 466 (Miss. 1976); and Ainsworth v. State, 304 So.2d 656 (Miss. 1974), cert. den. 422 U.S. 1012, 95 S.Ct. 2637, 45 L.Ed.2d 676 (1975). The trial judge's imposition of a 41-year sentence does not constitute error.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] Other officers saw those articles in the abandoned car the night before, but did not see the .38 pistol and license tag.
[2] Appellant argues that Officer Tim Hutson perjured himself because his testimony varied from that of other officers upon discovery of the automobile. However, all witnesses do not see the same things. Officer Hutson's testimony is not contradicted by other witnesses.