410 So.2d 1330 (1982)
Donald WARE
v.
STATE of Mississippi.
No. 53439.
Supreme Court of Mississippi.
March 17, 1982.
Moore, Royals & Taylor, Robert H. Taylor, Jr., Jackson, for appellant.
Bill Allain, Atty. Gen. by Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, P.J., and BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant was indicted, tried and convicted in the Circuit Court of the First Judicial District of Hinds County of the crime of armed robbery and sentenced to serve forty years in the custody of the Department of Corrections. On appeal appellant alleges the following assignments of error:
I. The Court erred in overruling the defendant's motion for a directed verdict of not guilty at the close of the state's case.
II. The court erred in allowing the .32 caliber handgun into evidence, which was state's exhibit No. 2, as it was the product of an illegal search and seizure.
III. The lower court erred in sentencing appellant to a term of forty years in the custody of the Mississippi Department of Corrections as it is disproportionate to the offense for which the appellant stands convicted and as can amount to a life sentence, which the jury refused and opposed.
On July 7, 1980, at about 11 p.m. there was a robbery of LeFleur's Restaurant located on the east side of Interstate 55 in Jackson, Mississippi. Mrs. Frazier was checking her cash register when a tall black male came up and asked for change. He then walked away and a short black male wearing a white sailor cap came around behind the counter with a pistol in his hand. He began to take money out of the cash register, grabbed Mrs. Frazier's purse and started to leave. A customer in the restaurant heard Mrs. Frazier's screaming and ran to the scene. He caught the robber, who was a small man, in his arms and was attempting to hold him when he discovered the robber's pistol. The customer then shoved the robber away. The robber started running through the door and in doing so, lost his cap.
An employee of the restaurant testified he noticed two black males, one tall and the *1331 other short, enter the restaurant shortly before the robbery and noticed the short man was wearing a white Navy cap.
Two restaurant employees were unloading garbage outside the restaurant at the loading dock just prior to the robbery when they saw a white and blue Thunderbird automobile drive slowly by the dock. The car stopped adjacent to the restaurant. The two employees then walked toward the car to inspect it more closely. They noticed either a short man or a man bending over on the passenger side of the car who was wearing a white cap pulled down on his head. A few minutes later, the two employees heard the noise from the robbery going on inside the restaurant and saw the blue and white Thunderbird speed away shortly thereafter.
Police Officers Ainsworth and Smith immediately went to the restaurant and secured all the information they could, including the white cap. About thirty minutes after the robbery the officers were driving along Mill Street when they noticed a blue and white Thunderbird run a stop sign. The car was stopped and the driver was requested to produce identification. He produced a driver's license in the name of a resident of Colorado. A radio check, unfortunately for the driver of the car, showed that the person with that name and license number was wanted in Colorado for a number of crimes, including armed robbery and assault. The driver of the car immediately thought it necessary to change his name and said his name really was James Fleming.
The officers, recognizing the description of the automobile and the two men, placed the men under arrest and made an inventory search of the car. In the rear compartment in a pasteboard box they found a .32 Smith & Wesson revolver with two cartridges therein.
Mrs. Frazier positively identified appellant as the short black male with the white Navy cap who had a gun, took the money from the cash register and grabbed her purse. The customer in the restaurant, who was understandably more concerned with the gun at his stomach rather than inspecting the face of the short man, identified the .32 Smith & Wesson revolver taken from the Thunderbird as the one that was held on him. This identification was through a large white spot that was on the top of the gun.
From the foregoing discussion, it is clear without citing the numerous applicable authorities that there was an abundance of testimony that required the lower court to overrule appellant's motion for a directed verdict. He clearly was identified as the short man with the gun with the white spot on top of it. This was in addition to the other restaurant employees regarding identification of the car.
Upon the state offering the .32 caliber revolver into evidence, there was an objection on the ground that it was secured from the car by an illegal search and contrary to appellant's Fourth Amendment rights. This argument may be disposed of by stating that appellant did not show any standing whatever to contend for such right. He was a passenger in the car driven by another. He did not testify, nor was there any other testimony introduced on the contention regarding the alleged illegal search. Appellant is attempting to assert a Fourth Amendment right that was a personal right which cannot be asserted vicariously. In Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court stated:
We decline to extend the rule of standing in Fourth Amendment cases in the manner suggested by petitioners. As we stated in Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969); "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." See Brown v. United States, 411 U.S. 223, 230, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973); Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968); Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963); cf. *1332 Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734, 97 ALR2d 1277 (1961); Gouled v. United States, 255 U.S. 298, 304, 41 S.Ct. 261, 263, 65 L.Ed. 647 (1921). A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. Alderman, supra, at 174, 89 S.Ct. 961 [at 966] 22 L.Ed.2d 176. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561, [66 Ohio Ops.2d 320] (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. See Simmons v. United States, supra, [390] at 389, 88 S.Ct. 967 [at 973], 19 L.Ed.2d 1247.
As heretofore stated the only thing that can be said with certainty is that appellant was a passenger in someone's car. There was absolutely no testimony or showing that he had in any way an "expectation of privacy" in the car that would give him a Fourth Amendment right. Appellant had no "automatic standing" because of the mere fact of his being a passenger in the car as stated in U.S. v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980):
We are convinced that the automatic standing rule of Jones has outlived its usefulness in this Court's Fourth Amendment jurisprudence. The doctrine now serves only to afford a windfall to defendants whose Fourth Amendment rights have not been violated. We are unwilling to tolerate the exclusion of probative evidence under such circumstances since we adhere to the view of Alderman that the values of the Fourth Amendment are preserved by a rule which limits the availability of the exclusionary rule to defendants who have been subjected to a violation of their Fourth Amendment rights.
(448 U.S. at 95; 100 S.Ct. at 2554; 65 L.Ed.2d at 630).
The above principle was discussed fully by this Court in the recent case of Butler Moss v. State of Mississippi, 1982, 411 So.2d 90.
Appellant asserts that the forty year sentence was in effect a life sentence and was therefore impermissible under Section 97-3-79, Mississippi Code Annotated, (Supp. 1981) which provides that if the jury does not bring its verdict providing for a life sentence, the court may fix the penalty at imprisonment for any term not less than three years. (Emphasis ours).
In Henderson v. State, 402 So.2d 325 (Miss. 1981), we upheld a forty-one year sentence for appellant with an actuarial life expectancy of 41.6 years. The appellant was 26 years of age and had an actuarial life expectancy of 40.51 years. The evidence in the record that was presented at the sentencing hearing would thoroughly justify the lower court in giving the appellant every year possible. This it did and we affirm and approve of the sentence.
AFFIRMED.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, BROOM, ROY NOBLE LEE, HAWKINS and DAN M. LEE, JJ., concur.