440 So.2d 307 (1983)
Tommy Lee JACKSON
v.
STATE of Mississippi.
No. 53905.
Supreme Court of Mississippi.
October 19, 1983.
Rehearing Denied November 16, 1983.
Don H. Evans, Jackson, for appellant.
Bill Allain, Atty. Gen., by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, ROY NOBLE LEE and HAWKINS, JJ.
ROY NOBLE LEE, Justice, for the Court:
Tommy Lee Jackson was indicted, tried and convicted in the Circuit Court of the First Judicial District of Hinds County, for armed robbery, and was sentenced to serve fifteen (15) years in custody of the Mississippi Department of Corrections. He has appealed here and assigns the following errors in the trial below:
(1) The court erred in denying appellant's motion to suppress and in allowing a money clip to be introduced into evidence over objection of the appellant.
(2) The court erred in refusing to direct a verdict in favor of appellant at the close of the trial and in refusing to grant appellant's request for a peremptory instruction.
(3) The court erred in denying appellant's motion for a new trial on the grounds that the verdict of the jury was against the overwhelming weight of the evidence and evinced bias and prejudice on the part of the jury against appellant and showed that the jury had a willful disregard for their duty as jurors.

*308 (4) The court erred in declining to grant a mistrial on three occasions during closing argument when the district attorney commented on appellant's failure to testify.

I.
On March 19, 1981, Marvin W. Landis exited a bus at the Greyhound Bus Station in Jackson, Mississippi, and went to the men's washroom. He noticed a black male at the rear, who was drying his hands. Shortly, he was grabbed around the chest from the back and fell to the floor, resulting in a fracture of his right arm (Landis was 80 years of age). He was severely beaten, and, the assailant removed Landis' wallet and credit card packet from his pockets, then demanded Landis' money upon threat of killing him with a knife. Landis reached in his pants pocket and handed the man a money clip with $200.00. The robber fled, aid arrived for Landis, and the robbery was reported to the police. Landis described the black man as about thirty years old, 5 feet 10 inches tall, weighing 130-135 lbs. with a pronounced limp in his left leg, probably due to a deformity.
Mississippi State Highway Patrolman Lewis Younger was outside the bus station at the time of the robbery. He saw Tommy Lee Jackson run from the station and drive away in a white-over-blue Chevrolet automobile, probably a 1971 or 1972 model. Patrolman Younger also had seen Jackson earlier that day walking in front of the bus station occasionally looking inside. However, no arrest was made.
On March 26, 1981, during the early morning hours, a robbery, following the same pattern as that of March 19, 1981, again occurred in the men's washroom of the Greyhound Bus Station. Officer J.C. Guy answered the call and obtained a description of the robber, viz, that he had a polio affliction, walked with a limp, wore a brown pullover monogram sweater and was driving a 1973 white-over-blue Chevrolet automobile. Tommy Lee Jackson answered the description, including wearing a brown pullover monogram sweater and driving a 1973 white and blue Chevrolet automobile, and he was arrested for the crime. Officer Guy searched the automobile during the early morning hours after the robbery. He found and removed a packet of wallet photos and a tire tool from it. There was considerable litter and debris in the vehicle, and he did not detect other articles. An inventory sheet was filled out, and the articles removed were noted.
Approximately nine hours later, Officer C.M. Crisco, accompanied by another officer, went to the storage lot where the white and blue Chevrolet was locked and stored in order to photograph it. The day was bright, the sun was shining, and the conditions were excellent for taking clear pictures.
Officer Crisco had participated in the investigation of the March 19 robbery and was familiar with the similarity of the modus operandi in the two crimes. He also knew the description of the silver money clip which was taken from Marvin W. Landis during the March 19 robbery and which had never been recovered. As he prepared to take the photographs, he looked inside the Chevrolet and saw a money clip sparkling in the sunlight on the floorboard behind the driver's seat. It fit the description of the missing Landis money clip and Officer Crisco reasoned that the object was valuable and vital evidence in the March 19 robbery. He returned to the police station, obtained the automobile keys, and went back to the vehicle and, without obtaining a search warrant, opened the automobile and removed the silver money clip. On the clip were the letters "P-O-P". (The money clip had been made by Marvin W. Landis' son in the 1940s and he had engraved the letters "P-O-P" on it.) Jackson was indicted for the March 19 robbery and his attorney filed a motion to suppress the evidence of the silver money clip, contending that it was obtained from the Jackson automobile on the morning of March 26, pursuant to an unlawful search without a warrant.
Jackson does not claim here that the officers lacked probable cause to arrest him on the morning of March 26, or to search his *309 automobile initially. He argues that the second search approximately nine hours after his arrest, while in jail, violated his constitutional rights.
In addition to having probable cause for search of the automobile initially, the officers had the right to, and did, make an inventory of the contents. Later that morning, Officer Crisco, upon seeing an object of value in the rear of the Jackson automobile, had a right to continue that inventory and retrieve the object, even though he did not note the object on the inventory sheet. Florence v. State, 397 So.2d 1105 (Miss. 1981), citing South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
In Henderson v. State, 402 So.2d 325 (Miss. 1981), a partial search of an automobile was conducted upon probable cause. The automobile was removed to the police department and was impounded in a garrage. The next morning, Henderson, the owner, was arrested. Two officers went to the garage and resumed search of the automobile, which had been made the night before. They found incriminating evidence on the second search and motion was made to suppress the evidence on the ground that the search was in violation of the defendant's constitutional rights. This Court held that the search was lawful and that the lower court correctly overruled the motion to suppress the evidence, citing Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), which stated:
"In Chambers v. Maroney we held that police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. There, as here `[t]he probable-cause factor' that developed at the scene `still obtained at the station house.' 399 U.S., at 52, 90 S.Ct., at 1981. The Court of Criminal Appeals erroneously excluded the evidence seized from the search at the station house in light of the trial judge's finding, undisturbed by the appellate court, that there was probable cause to search respondent's car." 423 U.S. at 68, 96 S.Ct. at 305, 46 L.Ed.2d at 211-12. [402 So.2d at 327].
In Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), the defendant was convicted of possessing a concealed weapon. The conviction was reversed by the Michigan Court of Appeals, holding that the warrantless search of respondent's automobile violated the Fourth Amendment. On certiorari to the United States Supreme Court, that Court reversed and said, in a per curiam opinion:
We reverse. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), we held that when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody. We firmly reiterated this holding in Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). See also United States v. Ross, 456 U.S. 798, 807, n. 9 [102 S.Ct. 2157, 2163, n. 9] 72 L.Ed.2d 572 (1982). It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant... . [458 U.S. at 261, 102 S.Ct. at 3081, 73 L.Ed.2d at 753].
Officer Crisco went to the Jackson automobile for the purpose of photographing same. He saw the silver money clip on the rear floorboard of the vehicle and, being familiar with the facts of the March 19 robbery and having a full description of the clip, reasonably believed it to be a valuable and vital piece of evidence in that crime. He had the authority and duty to take possession of that evidence as surely as if it had been contraband, and probable cause *310 attached for a warrantless search from the March 19 robbery. Therefore, for the reasons stated, we hold that the lower court properly overruled the motion to suppress that evidence.

II.  III.
Jackson contends (2) that the court erred in declining to direct a verdict of not guilty and in refusing to grant a peremptory instruction of not guilty, and (3) in overruling motion for a new trial on the ground that the verdict of the jury was against the overwhelming weight of the evidence. We will consider those two assignments together.
The evidence for the State was sufficient to present a guilt question to the jury. Marvin W. Landis testified to the facts of the robbery and in the courtroom, he positively identified Jackson as his assailant and the robber. He identified the silver money clip with the letters "P-O-P" on it as that presented to him years ago by his son and as taken from him by Jackson on the night of March 19. As stated hereinbefore, the money clip was found in the Jackson automobile. Jackson explained to officers that he found the money clip in the Greyhound Bus Station. A person answering Jackson's description was seen limping and running from the Greyhound Bus Station on the night of March 19, shortly after commission of the robbery, and getting into an automobile the same description as the Jackson automobile, which left the area.
In considering the question of whether or not a directed verdict or a peremptory instruction should have been granted for the appellant, the reviewing court must consider as true all the evidence introduced, which is favorable to the State, together with all reasonable inferences to be drawn therefrom, and, if they present an issue for determination by the jury, then the case must be submitted to the jury and will not be disturbed, if that evidence and those inferences support the guilty verdict. Gray v. State, 387 So.2d 101 (Miss. 1980); Warn v. State, 349 So.2d 1055 (Miss. 1977); Carroll v. State, 196 So.2d 878 (Miss. 1967). We are of the opinion that the lower court did not err in refusing to direct a verdict of not guilty and in declining to grant the peremptory instruction, and that the evidence supports the verdict.

IV.
Jackson last contends that the court erred in declining to sustain his objection and grant a mistrial for remarks made on three occasions during closing argument when the district attorney commented upon his failure to testify.
The record reflects that Jackson's attorney had him stand up, walk and limp before the jury, and took considerable time in displaying him to the jury. While the district attorney's remarks may be considered as insinuating that Jackson did not testify, there was no direct comment upon his failure to testify, and we do not think that the remarks constituted reversible error. We also note that the court granted the following instruction at the request of Jackson:
Instruction No. 2
The Court instructs the Jury that the Jury must not consider the fact that the Defendant did not testify in this case as arouse even a suspicion that he is guilty, but the State must prove him guilty beyond every reasonable doubt; and if the State has not done this, then the Jury must find the defendant "Not Guilty."
This instruction probably brought to the attention of the jurors, and impressed them, the fact that Jackson did not testify, more than the argument of the district attorney.
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, PRATHER and ROBERTSON, JJ., concur.
HAWKINS and DAN M. LEE, JJ., specially concur.
*311 HAWKINS, Justice, specially concurring:
The defendant in this case is crippled, paralyzed in one arm and leg.
My concern with this case is the majority's holding relative to comments by the prosecution on the failure of the defendant to testify.
I agree with the majority's conclusion that the district attorney's remarks could be "considered as insinuating that Jackson did not testify."[1]
I do not agree with the majority's statement, "The record reflects that Jackson's attorney had him stand up, walk and limp before the jury, and took considerable time in displaying him to the jury."
The record is a follows:
BY MR. EVANS (defense counsel, during oral argument): ... I'd like to get Tommy Lee Jackson to stand up and come right over here where all of the jurors can see him.
Objection was made and overruled.
I  I'd like for him to just stand up here, to pull up your  his sleeve 
Objection was made and overruled.
BY MR. EVANS: You can go sit down now. Now, you just saw this Defendant right here. [Record 154-155]
There is no showing how long the defendant was before the jury, or precisely what was shown.
I do question the propriety of exhibiting the defendant to the jury in oral argument, unless previously during the trial he had been presented to some witness, or some record made of his physical characteristics.
The majority seems to conclude that (1) because there was no direct, open statement to the jury that the defendant had not testified, and (2) because of instruction granted the defense on the defendant's right not to testify, that there was no reversible error.
I would have dissented to both these propositions, except the recent case of Carl E. Lee and Travis Howard Lee v. State, 435 So.2d 674 (Miss. 1983), removes what little problem I formerly had when prosecuting attorneys alluded to a defendant's failure to testify.
The defendant in this case requested and was granted the following instruction:
The Court instructs the Jury that the Jury must not consider the fact that the Defendant did not testify in this case as evidence against him nor does this fact arouse even a suspicion that he is guilty, but the State must prove him guilty beyond every reasonable doubt, and if the State has not done this, then the Jury must find the defendant "Not Guilty."
As I said in Lee and Lee v. State, supra, it is a mystery to me that defense counsel would ask for such an instruction, yet when the Court does give such an instruction, any subsequent statement or insinuation by the state about the defendant not testifying makes the comment more serious, not less serious. After the Court has specifically told the jury that the defendant's failure to testify does not "arouse even a suspicion that he is guilty," to permit the state to make some insinuation about his failure to testify aggravates the precaution the Court has attempted to instill in the jury.
Having had my say in Lee and Lee, however, and eight of the Justices viewing the matter otherwise, I see no necessity in repeating the dissent. With misgivings over what I must in deference conclude is a grave erosion of rights long vouch-safed to defendants in criminal trials, I concur.
DAN M. LEE, J., joins this opinion.
NOTES
[1] In oral argument the state conceded the remarks would have been improper, but argued they were invited by defense counsel.