# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-01077-SCT

*JOEY DANTE JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2008 |
| TRIAL JUDGE: | HON. VERNON R. COTTEN |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | TODD W. SOREY |
| | JERRY L. BUSTIN |
| | GAR N. SCHWIPPERT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA H. TEDDER |
| DISTRICT ATTORNEY: | MARK S. DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Joey Dante Johnson appeals his conviction of three counts of armed robbery and his sentence of forty-one years without parole.  Finding no error, we affirm.

## PROCEDURAL HISTORY

¶2.    Johnson was indicted for three counts of armed robbery under Sections 97-3-79 and 99-19-81 of the Mississippi Code.[1]  A jury found Johnson guilty of all three counts but did not impose the maximum penalty of life imprisonment.  The trial court conducted a sentencing hearing and heard evidence of Johnson's two prior felony convictions.[2]  The trial

---

[1]Mississippi Code Section 97-3-79 provides that:

Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.

Miss. Code Ann. § 97-3-79 (Rev. 2006).

Mississippi Code Section 99-19-81 provides that:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more . . . shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (Rev. 2007).

[2]In 2001, Johnson pleaded guilty to taking away a motor vehicle, to which he was sentenced to three years in the custody of the Mississippi Department of Corrections.  In 2006, Johnson pleaded guilty to possessing cocaine, and he was sentenced to serve eight years in the custody of the Mississippi Department of Corrections for this crime.

2

court sentenced Johnson to serve forty-one years for each count, with each count to run concurrently. Additionally, the court ordered that Johnson's sentence should not be reduced or suspended, and that he should not be eligible for parole. Johnson timely filed this appeal.

## STATEMENT OF FACTS

¶3. On February 4, 2007, all of the parties in this case arrived at the Harmony Community Center ("HCC") in Leake County shortly after watching a football game. The defendant, Joey Johnson, and his friend, Eddie Vivians, had watched the game together at a friend's house. Johnson and Vivians left the friend's house to look for Larry Bernard Green at the HCC, because Larry Green had lost a $20 bet to Johnson over the game. Meanwhile, Larry Green had watched the football game with Kendrick Red Green (Larry Green's brother), Andrew Whittington, and Ronald Lindsey. After the game, they left Larry Green's house and went to the HCC.

*Robbery of Kendrick Green*

¶4. Kendrick and Larry Green testified that they arrived first at the HCC, and Johnson and Vivians arrived about five minutes later. Both Kendrick and Larry Green testified that Johnson had exited his car shooting two guns, a pistol and a revolver, and demanding $20 from Larry Green. According to Kendrick Green, he tried to give Johnson $20, but Johnson then demanded all of Kendrick Green's money. Kendrick Green stated that he emptied his money clip, giving Johnson a total of $140. Kendrick Green testified that Vivians then began fighting with Larry Green, and Johnson joined their fight. When Kendrick Green attempted to break up the fight, he obtained Johnson's pistol.

3

¶5.    Kendrick Green ran with the gun to Deputy Sheriff Johnny Nealy's home.  Kendrick Green testified that he gave the gun to Deputy Nealy, who placed it into an evidence bag.  Kendrick Green stated that he did not do anything to the gun prior to giving it to Deputy Nealy.

¶6.    Deputy Nealy testified that Kendrick Green arrived at his house and informed him of the events at the HCC and gave him a Rossi .357 Magnum pistol.  Deputy Nealy testified that he examined the firearm and found six empty shells inside the gun's cylinder.

*Robbery of Andrew Whittington*

¶7.    Andrew Whittington testified that Johnson had approached him while he was in a car.  Whittington testified that Johnson had a gun in each hand and demanded that he get out of the car.  When Whittington exited the car, Johnson hit him in the jaw and ribs with a gun.  Whittington fell to the ground, at which point, Johnson ripped Whittington's pants off.  Whittington's wallet, which contained $55, fell out of his pants pocket.  Whittington stated that Johnson took the wallet.  A witness corroborated Whittington's version of events at trial.  Vivians also testified that he had witnessed Johnson rip Whittington's pants, but that he did not see Johnson take anything out of the pants pocket.

*Robbery of Marcus McKee*

¶8.    Marcus McKee arrived at the HCC after he had watched the football game with a friend.[3]  McKee testified that he heard gunshots as he arrived.  McKee stated that he was

_____

[3]While McKee did not see Larry and Kendrick Green, he did see Whittington leaning against a car.  Further, Vivians testified that McKee arrived about the time Whittington and

talking with Vivians when Johnson walked over and pointed a pistol at him (McKee). McKee testified that he and Johnson fought, and then Johnson approached him with two guns and demanded his money. McKee gave Johnson $250. Vivians testified that he saw Johnson point a gun at McKee and demand money.

*Johnson's Version of Events*

¶9. Unsurprisingly, Johnson's version of events is contrary to that of the victims. Johnson testified that he got into an argument with Larry Green and decided to leave the HCC, when Green charged him with a gun.[4] According to Johnson, Vivians stopped Larry Green by hitting Green in the side of the head. Johnson then began to fight with Larry Green. Johnson admitted to taking the $20 from Kendrick Green, as the pay-off for the bet he had won.

¶10. Johnson also admitted to fighting with Whittington, since Whittington had allowed Larry Green to charge at him (Johnson) with a gun. Johnson stated that he attempted to pick up Whittington by Whittington's pants, and that the pants ripped. Johnson testified that he never saw anything fall out of Whittington's pants.

¶11. Johnson further admitted to fighting with McKee, but he denied robbing McKee. Johnson denied that he ever had possessed a gun.

---

Johnson were fighting. We note these facts to provide a time frame in which the three robberies took place.

[4]Vivians testified that Larry Green pointed a pistol at Johnson and the two began to fight. Vivians stated that Johnson obtained the pistol from Green.

5

**DISCUSSION**

## I. Is Mississippi Code Section 99-19-81 unconstitutional because mandatory sentencing violates the Supremacy Clause, the Separation of Powers Doctrine, and the Sixth and Fourteenth Amendments to the U.S. Constitution?

¶12.     Johnson's arguments under this issue are procedurally barred, as he did not raise them at the sentencing phase. "This Court's general policy is that 'errors raised for the first time on appeal will not be considered, especially where constitutional questions are concerned.'" *Powers v. Tiebauer*, 939 So. 2d 749, 752 (Miss. 2005) (citing *Stockstill v. State*, 854 So. 2d 1017, 1023 (Miss. 2003)).  Notwithstanding the procedural bar, these arguments fail.

*Separation of Powers*

¶13.     Johnson first argues that Section 99-19-81 violates the Separation of Powers Doctrine. *See* Miss. Code Ann. § 99-19-81 (Rev. 2007).  Johnson acknowledges that this Court has held "there is no violation of the separation of powers doctrine by statutorily mandated penalties for crimes." *Fisher v. State*, 690 So. 2d 268, 275-76 (Mis. 1996).  Johnson, however, argues that this Court has never considered a separation of powers challenge "between the legislature and an *individual's* fundamental rights."  We fail to see how the Separation of Powers Doctrine is applicable to a division of power between an individual and the Legislature.  The Separation of Powers Doctrine applies to our three branches of government. *Id.*  This issue has no merit.

*The Supremacy Clause*

¶14.     Johnson further argues that the trial court's failure to conduct a proportionality review violated the Supremacy Clause.  In *Clowers v. State*, this Court affirmed a defendant's

6

sentence to less than the maximum penalty as a Section 99-19-81 habitual offender, even though the statute provided the trial court no sentencing discretion. *Clowers v. State*, 522 So. 2d 762, 765 (Miss. 1988). This Court found that a "trial court has authority to review a particular sentence in light of constitutional principles of proportionality as expressed in *Solem v. Helm* [463 U.S. 277, 103 S. Ct. 3001, 77 L. E. 2d 637 (1983), *overruled by Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)]. That authority is a function of the Supremacy Clause." *Id.* We further noted that the *Solem* Court set forth three objective factors to guide a proportionality analysis: "(1) the gravity of the offense and the harshness of the penalty; (2) comparison of the sentence with sentences imposed on other criminals in the same jurisdiction; [and] (3) comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed in this case." *Id.* at 764.

¶15. This Court has held that a proportionality review under *Solem* applies "'only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality."'" *Edwards v. State*, 800 So. 2d 454, 468-69 (Miss. 2001) (quoting *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996)). If an inference of gross disproportionality is found, the court must proceed to evaluate the remaining *Solem* factors in light of the evidence submitted by the defendant. *Id.* This Court has ruled that the defendant has the burden of presenting evidence of each *Solem* factor in order for the court to determine whether the sentence is disproportionate. *Willis v. State,* 911 So. 2d 947, 951

7

(Miss. 2005). Johnson has failed to present the trial court or this Court with evidence as to each *Solem* factor, and as such, this claim is barred from further review. *Id.*

¶16. Furthermore, we find that the proportionality review announced in *Clowers* is inapplicable to the case at hand. The maximum penalty under Section 99-19-81 is life imprisonment. Miss. Code Ann. § 99-19-81 (Rev. 2007). However, only the jury can sentence a defendant to life for armed robbery, even when the defendant is a Section 99-18-81 habitual offender. *Watkins v. State*, 500 So. 2d 462, 462 (Miss. 1987). Because the jury did not sentence Johnson to life imprisonment, the trial court had *discretion*[5] under Section 97-3-79 to sentence Johnson to "any term [excluding life] not less than three (3) years." Miss. Code Ann. § 97-3-79 (Rev. 2006). However, the trial court must have imposed a sentence that is "reasonably less than life." *Watkins*, 500 So. 2d at 462.

¶17. Johnson argues that his forty-one-year sentence is effectively a life sentence, since his actuarial life-expectancy is 41.7 years. In *Henderson v. State*, an armed-robbery case, this Court upheld a forty-one-year sentence for an appellant with an actuarial life expectancy of 41.6 years. *Henderson*, 402 So. 2d 325, 328-29 (Miss. 1981). This Court also relied on *Henderson* in *Ware v. State*, 410 So. 2d 1330 (Miss. 1982), another armed-robbery case in which the defendant, who had an actuarial life expectancy of 40.51 years, argued that his

[5]Johnson also argues that the trial court violated his liberty interests under the Fourteenth Amendment to the U.S. Constitution by failing to exercise discretion in imposing his sentence. Johnson provides no authority for the proposition that the trial court must sua sponte conduct a proportionality review. Furthermore, we find that the trial judge did exercise his discretion by imposing a forty-one-year sentence for three counts of armed robbery, running the sentences concurrently, rather than consecutively.

forty-year sentence amounted to life imprisonment. ***Ware***, 410 So. 2d at 1332. This Court rejected his argument, noting "[t]he evidence in the record that was presented at the sentencing hearing would thoroughly justify the lower court in giving the appellant every year possible." ***Id***.

¶18.     The record before this Court also justifies the trial court in giving Johnson, a habitual offender, forty-one years without parole for *three* counts of armed robbery. If this case was treated any differently, circumstances might arise where it would be impossible for the court "to impose any meaningful sentence where more than one crime was committed." ***Erwin v. State***, 557 So. 2d 799, 803 (Miss. 1990) (providing in dictum that a court may impose sentences for multiple crimes that in combination exceed the defendant's actuarial life expectancy, as the court should impose each sentence without respect to the other). The Seventh Circuit has further reasoned why a sentence such as Johnson's should be upheld:

> [A]ttempts to define precisely at what point a term of years becomes a life sentence . . . [are] of limited utility. Estimated life expectancy is just that -- an estimate. The reality is that some persons live beyond their life expectancies while others do not. To hold that a defendant's sentence must be a certain number of years or months less than his life expectancy would place unwarranted emphasis on a number that is itself only a rough approximation.

***U.S. v. Martin***, 115 F.3d 454, 455 (7th Cir. 1997). Given all of the above, Johnson's argument that Section 99-18-81 violates the Supremacy Clause is without merit.

*Sixth and Fourteenth Amendment*

¶19.     Johnson also argues that his status as a habitual offender is a "fact" that the jury should determine, and as such, Section 99-18-91 violates the Sixth and Fourteenth

9

Amendments to the U.S. Constitution. In *Jones v. U.S.,* the United States Supreme Court set forth the rule that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (*other than a prior conviction*) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. U.S.*, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) (emphasis added). The Supreme Court reiterated this rule in *Apprendi v. New Jersey*, and found that "[t]he Fourteenth Amendment commands the same answer in [a] case involving a state statute." *Apprendi v. New Jersey*, 530 U.S. 466, 476, 490, 120 S. Ct. 2348, 147 L. Ed. 435 (2000); *see also Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Furthermore, this Court has held that a defendant has no constitutional right to a jury trial on the issue of habitual-offender status. *Keyes v. State*, 549 So. 2d 949, 951 (Miss. 1989). Therefore, we find this issue has no merit.

## II. Was Johnson deprived of his Sixth Amendment right to receive a fair and impartial trial?

### A. Application of *Strickland*

¶20. This Court has adopted the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to analyze a claim of ineffective assistance of counsel. *Payton v. State*, 708 So. 2d 559, 560 (Miss. 1998). To prevail under *Strickland*, Johnson must show that (1) his counsel's performance was deficient, and that (2) the deficiency prejudiced him. *Leatherwood v. State*, 473 So. 2d 964, 968 (Miss. 1985). Additionally, there is a strong but rebuttable presumption that his counsel's decisions were

10

sound trial strategy. *Id*. at 968-69. The United States Supreme Court has reasoned that "a court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." ***Bell v. Cone***, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). To overcome that presumption, Johnson must show that, but for his counsel's deficiency, a different result would have occurred. ***Leatherwood***, 473 So. 2d at 968-69.

¶21. With new appellate counsel, Johnson argues that his trial counsel was constitutionally ineffective in failing to:

(1) request a change of venue;
(2) request jury sequestration;
(3) recognize that one of the jurors was legally deaf;
(4) submit a jury instruction of self-defense;
(5) submit a jury instruction of circumstantial evidence;
(6) request the judge apply a proportionality review under ***Clowers***;
(7) object to the district attorney's reference to Johnson as a habitual offender;
(8) object to the gun being admitted into evidence;
(9) object to leading questions;
(10) question a witness about his alcohol consumption;
(11) request that the court sever the charges; and
(12) object to "surprise" testimony of Johnson possessing two guns.

Johnson also argues that his counsel was ineffective by introducing evidence of a prior bad act.

¶22. Mississippi Rule of Appellate Procedure 22(b) provides in relevant part that "[i]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal if

11

such issues are based on facts fully apparent from the record." Miss. R. App. P. 22(b). The official comment to Rule 22(b) provides that:

> [I]ssues such as claims of ineffective assistance of counsel for failure to object to evidence offered by the state or to argument by the state must be raised on direct appeal. Other post-conviction issues which cannot be raised at the time of appeal because they involve actions or inaction outside the record are not waived since they cannot practically be raised without further development or investigation.

Miss. R. App. P. 22(b) cmt. Therefore, this Court must determine whether the claims of ineffective assistance of counsel are better addressed in this direct appeal or in post-conviction relief (PCR) proceedings. *Neal v. State*, 15 So. 3d 388, 405-06 (Miss. 2009).

¶23. This Court finds that several of Johnson's arguments under this issue are inappropriate for this Court to decide on direct appeal. We find that matters outside the trial record would need to be analyzed to determine whether Johnson's trial counsel was ineffective in: (1) failing to request a change of venue; (2) failing to request jury sequestration; and (3) failing to recognize that one of the jurors was legally deaf. Therefore, we decline to address these claims of ineffective assistance of counsel on direct appeal, finding that they would be more appropriately addressed by way of post-conviction relief. We will address the remaining claims of ineffective assistance raised by Johnson.

¶24. Johnson alleges that his counsel was ineffective by failing to submit a jury instruction on self-defense. In order for self-defense to constitute a valid defense, the defendant must "act in response to an urgent actual threat or on a reasonable belief that such threat is actual or imminent." *Carter v. State*, 858 So. 2d 212, 215 (Miss. Ct. App. 2003). We fail to see

12

how a self-defense instruction is applicable to a charge of robbery, a specific-intent crime. ***Croft v. State***, 992 So. 2d 1151, 1157 (Miss. 2008).  Therefore, we find that counsel was not ineffective in failing to submit a self-defense instruction.

¶25.    Johnson also argues that his counsel was ineffective by failing to submit an instruction on the "heightened burden of proof required for a case based on circumstantial evidence." This Court has explicitly defined circumstantial evidence as "evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.  Conversely, *eye witness testimony is thought of as direct evidence*."  ***State v. Rogers***, 847 So. 2d 858, 863 (Miss. 2003) (emphasis added).  The victims, witnesses, and Johnson, testified as to the events that occurred at the HCC.  This not a case that warrants a jury instruction on circumstantial evidence.  Therefore, we find that Johnson's counsel was not ineffective in failing to submit a circumstantial-evidence instruction.

¶26.    Johnson argues that his counsel was ineffective in failing to inform the judge a proportionality test could be used to exercise discretion.  Based on our discussion *supra* regarding proportionality, we find this argument to be without merit.

¶27.    Johnson argues that his counsel was ineffective in failing to object to the district attorney's reference to Johnson as a habitual offender during a chambers conference.  After reviewing the record, we find the district attorney merely informed the court that Johnson was charged as a habitual offender.  More importantly, the discussion took place in the judge's chambers, not in front of the jury.  We find that Johnson's argument as to this issue to be without merit.

13

¶28.    Johnson further alleges that his counsel was ineffective in failing to challenge the foundation for admitting the gun into evidence.  Specifically, Johnson alleges that the gun was improperly admitted as evidence, due to the witnesses' confusing references to multiple guns.  We find the gun was appropriately identified through the testimony of Kendrick Green and Deputy Nealy.  Kendrick Green testified that he had obtained the gun from Johnson and brought it directly to Deputy Nealy, who at trial, identified the gun as the one he received from Kendrick Green.  We find that the proper foundation was laid for introduction of the gun, and any discrepancies in testimony were issues to be resolved by the jury.  Therefore, we find that counsel was not ineffective in failing to challenge the foundation of admitting the gun into evidence.

¶29.    Johnson next argues that his counsel was ineffective in failing to object to leading questions, and in failing to question the witnesses about their alcohol and drug consumption on the night of the robbery.[6]  While counsel failed to object to some leading questions, we do not find that such a failure amounts to deficient performance.  Furthermore, Johnson has failed to provide this Court with any argument or evidence that these failures prejudiced him.  This issue has no merit.

¶30.    Johnson also argues that his counsel was ineffective by failing to move the court to sever the three charges. Section 99-7-2 of the Mississippi Code governs multiple offenses in a single indictment.  That statute provides:

---

[6]We note that Johnson's counsel did cross-examine Kendrick Green about his consumption of four to five beers the day of the altercation.

14

(1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme.

Miss. Code Ann. § 99-7-2 (Rev. 2007). When the defendant requests severance of a multi-count indictment, the trial court should conduct a hearing. *Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991). The State bears the burden of making a prima facie case that the alleged offenses do indeed arise out of the same transaction or are parts of a common scheme. *Id.* The defense may rebut this showing. *Id.* In ruling upon the motion to sever, the trial court must consider the time period between the offenses, whether evidence proving each offense would be admissible to prove the other counts, and whether the offenses are interwoven. *Id.*

¶31. The indictment at issue provided that the robberies were "part of a continuing series of acts connected together and constituting one with the other parts of a common design, scheme and plan." After reviewing the transcript, we find that the robberies were a continuation of acts that were connected by the same parties, at the same place, and at the same time. Johnson has failed to provide any argument that the robberies were in fact separate and distinct acts. We find this argument has no merit.

¶32. Johnson also argues that his counsel was ineffective in introducing evidence of a prior bad act. At trial, Johnson's counsel questioned McKee about filing the same charges in 2006 against Johnson. McKee testified the charges were dropped, and that he had mistakenly identified Johnson as the assailant in 2006. Johnson's counsel questioned McKee about the 2006 charges, implying that McKee had falsely accused Johnson for a second time. Clearly,

15

this constituted trial strategy and falls within the wide range of reasonable assistance of counsel. We find this issue has no merit.

¶33. Johnson further alleges that testimony regarding his having two guns was a surprise that affected his attorney's ability to provide reasonably adequate representation, to which his counsel should have objected. Contrary to these arguments, the record reveals Johnson's counsel adequately addressed the issue, asking each witness to review his previous statement (in which each witness reported only one gun). Johnson's counsel properly cross-examined and impeached the testimony of each witness. Johnson has shown no prejudice resulting from the alleged surprise testimony that there were two guns. We find this issue to be without merit.

### B. Application of *Cronic*

¶34. Johnson analyzes the same above-referenced errors under ***U.S. v. Cronic***, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 657 (1984), for the proposition that his counsel failed to subject the trial to "meaningful adversarial testing." In *Cronic*, the U.S. Supreme Court found that "[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." ***Id.*** at 658. The Court in ***Cronic*** set forth three situations in which prejudice was presumed: (1) when counsel is completely denied; (2) when counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing; (3) and when counsel is called upon to render assistance under circumstances where competent counsel very likely could not. ***Id.*** at 659-60. The Supreme Court has also held that a correct analysis falls under ***Strickland***, not ***Cronic***, when

16

"respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. *For purposes of distinguishing between the rule in **Strickland** and that of **Cronic**, this difference is not of degree but of kind.*" **Bell v. Cone**, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (emphasis added). The case *sub judice* is properly analyzed under **Strickland**, as Johnson argues specific failures of his counsel, not failure as a whole. Therefore, we find Johnson's argument of error under **Cronic** to be without merit.

### III. Whether the evidence presented at trial was insufficient to establish the three counts of armed robbery and whether the jury's verdict was against the overwhelming weight of the evidence?[7]

#### A. Whether the motion for judgment notwithstanding the verdict was properly denied.

¶35. A motion for judgment notwithstanding the verdict (JNOV) challenges the legal sufficiency of the evidence. **Davis v. State**, 18 So. 3d 842, 850 (Miss. 2009). As noted by this Court, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005) (quoting **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (Miss. 1979)).

---

[7]Johnson also argues that his counsel was ineffective in failing to provide caselaw in support of his motions for judgment notwithstanding the verdict and a new trial. As will be discussed in the text, *supra*, these two motions were properly denied. Therefore, counsel was not ineffective in failing to support these motions with authority.

17

¶36. Considering the evidence in the light most favorable to the State, we find there was sufficient evidence to convict Johnson of three counts of armed robbery. The jury was presented with testimony and evidence that Johnson (1) feloniously took (2) money from Kendrick Green, Andrew Whittington, and Marcus McKee, (3) against their will, (4) by putting each man in fear of immediate injury by the exhibition of a deadly weapon, i.e., the gun. *See* Miss. Code Ann. § 97-3-79 (Rev. 2006). After reviewing the record, we find that a rational jury could have found the essential elements of armed robbery beyond a reasonable doubt. This issue has no merit.

### B. Whether the motion for a new trial was properly denied.

¶37. This Court will reverse a trial court's denial of a motion for new trial only when such denial amounts to an abuse of discretion. *Neal v. State*, 15 So. 3d 388, 410 (Miss. 2009). This Court will reverse when the verdict is "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable result." *Bush*, 895 So. 2d at 844. On motion for a new trial, "'the court sits as a thirteenth juror [and] the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *Id.* (quoting *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000). Furthermore, "the evidence should be weighed in the light most favorable to the verdict." *Id.*

¶38. After reviewing the evidence in the light most favorable to the verdict, we cannot say the trial court abused its discretion in denying the motion for a new trial. Kendrick Green made an in-court identification of Johnson as the man who had pointed two pistols at him and

18

demanded his money. Whittington and a witness identified Johnson in court as the man who had hit Whittington with a gun and ripped off Whittington's pants and picked up an object that fell out. Whittington further testified that the only thing in his pants was a wallet containing $55. McKee also identified Johnson in court as the man who had demanded and taken his money at gunpoint. Johnson took the stand, only to say that all the witnesses were lying. The credibility of witnesses is not for the reviewing court, but only for the jury. *Doby v. State*, 532 So. 2d 584, 591 (Miss. 1988). After reviewing the record, we fail to see any abuse of discretion on the part of the trial judge. Johnson's motion for a new trial was properly denied.

## CONCLUSION

¶39.    For these reasons, we affirm Johnson's conviction of three counts of armed robbery and sentence of forty-one years without parole or probation.

¶40.    **CONVICTION OF THREE (3) COUNTS OF ARMED ROBBERY AND SENTENCE OF FORTY-ONE (41) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCE SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL SAID APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**