CHANDLER, Justice,
dissenting:
¶ 38. I respectfully dissent. This Court has held that the statutory maximum to which a trial court can sentence one convicted of armed robbery is a term reasonably expected to be less than life. Stewart v. State, 372 So.2d 257, 259 (Miss.1979). Hampton has produced on appeal an actuarial table indicating that the trial court imposed an armed-robbery sentence of twenty years that exceeded his life expectancy, as a black male, of sixty-three years. Thus, this case reduces to the question, “should race and gender be considered along with age in calculating the life expectancy of a defendant being sentenced to a term of years ‘reasonably calculated to be less than life?’ ” Both Hampton and the State answer that question with an unequivocal “yes.”
¶ 39. This Court recognized the necessity of this substantive question when it issued an order for supplemental briefing, signed by Presiding Justice Randolph, asking the parties “[w]hat factors, other than age, may a trial court consider at sentencing?” As the State responded, “[ijndividu-alized sentencing has always been a goal of both the State and Federal judiciary .... we find ourselves in agreement with the appellant who states that ‘... a trial court should consider age, race, and gender when sentencing a defendant convicted of armed robbery.’ ” Yet the majority finds this issue procedurally barred.
¶ 40. This Court cannot refuse to hear a challenge to an illegal sentence merely because the defendant failed to raise that argument or present evidence supporting that argument at the trial court. As Presiding Justice Randolph’s unanimous majority opinion in Rowland states, “errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot he raised for the first time on appeal.” Rowland v. State, 98 So.3d 1032, 1036 (Miss.2012) (emphasis added). Hampton does not, in this circumstance, have an obligation to present an “excuse for the failure to present such evidence and argument to the trial court.” Maj. Op. at ¶ 15. As this Court recognized in Rowland, one practical function of exempting illegal sentences from procedural bars is to relieve defendants of exactly such an obligation. Id. Further, at the sentencing hearing, the burden is on the State to present evidence that will result in a legal sentence, rather than on the defendant to present or anticipate evidence to ensure that he will not receive an illegal sentence. See Chase v. State, 645 So.2d 829, 860-861 (Miss.1994). If, on appeal, Hampton shows that his sentence is illegal because it exceeds what this Court has for four decades construed to be the maximum “statutory penalty,” then Hampton’s failure to object at the trial court is no procedural bar to our consideration of this violation of his fundamental right to be free from an illegal sentence. This is especially true because this Court can take judicial *1007 notice of life-expectancy tables. Henderson v. State, 402 So.2d 325, 328 (Miss.1981); Walton v. Scott, 365 So.2d 630 (Miss.1978). See also Mississippi Rule of Evidence 20(f).
¶41. The sentencing statute provides that a convicted armed robber:
shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
Miss.Code Ann. § 97-3-79 (Rev. 2014). For four decades, this Court has correctly held that, under Section 97-3-79, when a jury of twelve peers fails to unanimously impose the maximum sentence of life, the judge lacks the authority to supersede the jury’s judgment by imposing a sentence equal to or exceeding life. Stewart v. State, 372 So.2d 257, 259 (Miss.1979). The trial court must therefore “make a record of and consider all relevant facts necessary to fix a sentence for a definite term [of years] reasonably expected to be less than life. The court should consider the age and life expectancy of the defendant and any other pertinent facts which would aid in fixing a proper sentence.” Id. at 259 (emphasis added).
¶ 42. The majority takes an ambiguous position on whether Mississippi’s armed-robbery sentencing scheme has a statutory maximum. It states agreement with Justice Coleman’s special concurrence that “no ‘statutory maximum’ is provided,” thus calling into question the validity of Stewart as controlling precedent. But under Stewart, which is the controlling precedent, examining the legality of a sentence for armed robbery requires an examination of whether the sentence exceeds a reasonable estimation of the defendant’s life expectancy. Because Hampton’s sentence exceeds the life expectancy of a person of his race and gender, Hampton’s sentence can be affirmed only by concluding that the neutral actuarial factors of age, race, and gender are not required when considering evidence of a defendant’s life expectancy.[9]
¶ 43. The majority repeatedly states that Hampton’s sentence does not exceed the maximum “statutory” penalty. But under Stewart, the maximum “statutory ” penalty is a term of years reasonably calculated to be less than life and, in making that calculation, the trial court must consider evidence of the defendant’s age, life expectancy, and any other relevant factors. Stewart, 372 So.2d at 259. Because Hampton’s sentence is within the life expectancy of an American of his age but exceeds that of an American of his age, race, and gender, this issue is squarely before the Court. We can today decide whether the trial court can impose a sentence for armed robbery that exceeds the life expectancy of a person of the defendant’s age, race, and gender. And while recidivism can be a relevant factor to consider, Hampton’s unsavory character as a recidivist, alcoholic, and general ne’er-do-well in no way relieves our justice system from its responsibility of imposing a legal sentence on him. The majority’s discussion of those factors is therefore irrelevant to the ultimate legal question at hand.
¶44. The majority’s citation to cases where this Court upheld sentences that likely “amount to” life sentences does not support the proposition that Hampton’s sentence was legal. Maj. Op. at ¶ 8. It is *1008 true that this Court regularly affirms term-of-years sentences that significantly exceed a defendant’s life expectancy, but only when the relevant sentencing statute permits such a sentence. The statutory maximum to which a trial court may sentence a convicted armed robber under Section 97-3-79 is a term reasonably expected to be less than life. Miss.Code Ann. § 97-3-79 (Rev. 2014); Stewart, 372 So.2d at 259. Our holdings under other statutes with greater maximum penalties have no bearing on the issue at hand.
¶ 45. As the State points out, both Mississippi and federal courts consistently have used race and gender to calculate life expectancy in sentencing. In Arrington v. State, we found that the sentence was not greater than the defendant’s reasonable life expectancy where “[t]he 1980 Statistical Abstract of the United States, published by the United States government, shows the life expectancy of the average black male in 1978, 17 years of age, to be 50.2 years.” Arrington v. State, 411 So.2d 779, 780 (Miss.1982) (emphasis added). In Trammell v. State, the Court of Appeals found that the record supported that the defendant’s sentence was reasonably less than life when “the [actuarial] tables showed the life expectancy for a person of Trammell’s age, sex, and race to be thirty-nine years.” Trammell v. State, 62 So.3d 424, 431 (Miss.Ct.App.2011) (emphasis added). See also Payton v. State, 897 So.2d 921, 950 (Miss.2003); Henderson v. State, 402 So.2d 325, 328-29 (Miss.1981).
¶ 46. Federal caselaw expressly approves the use of race and gender and the use of life-expectancy tables to arrive at a sentence less than life. Judge Posner of the Seventh Circuit stated:
the best way ... is to direct the sentencing judge when choosing a period of years for a defendant not eligible for a life sentence to select a period that in light of the defendant’s fundamental demographic characteristics, of age and sex ... is significantly, though not necessarily greatly, less severe than a sentence of life imprisonment.... The differences in adult life expectancy between blacks and whites in this country are so dramatic that to ignore them in computing a defendant’s life expectancy might make it difficult to pick a sentence consistent with [the statute],
U.S. v. Prevatte, 66 F.3d 840, 847-48 (7th Cir.1995) (J. Posner, concurring) (emphasis added). U.S. v. Martin, 115 F.3d 454, 455 (7th Cir.1997).
¶ 47. Our inability to know the lifespan of any particular individual is exactly what creates the need for an objective starting point that takes into account the most basic and consistent of human demographic characteristics. Consider Presiding Justice Randolph’s majority discussion in Reb-elwood Apartments RP, LP v. English, 48 So.3d 483 (Miss.2010), in which the court found that, in a wrongful-death case, the trial court had erred in allowing the plaintiffs economist to use the national-average incomes to calculate loss of future earnings as opposed to relying on the decedent’s actual earnings. After approving departure from the nationally averaged tables for work-life expectancy in order to reach a more accurate calculation for the decedent, Presiding Justice Randolph wrote for the Court:
Work-life expectancy cannot be assumed, but must be based on an objective standard ... “courts are not prophets and juries are not seers. In making awards to compensate injured plaintiffs or the dependents of deceased workers for loss of future earnings, however, these fact-finders must attempt, in some degree, to gauge future events. Absolute certainty is by the very nature of the effort impossible. It is also impossible *1009 to take into account every bit of potentially relevant evidence concerning the tomorrows of a lifetime. The approach we adopt attempts to assure plaintiffs a fair measure of damages, to give defendants a reasonable adjustment for reducing future losses to present value, and to avoid making trials even more complex and their results even more uncertain. It is the product of a balancing of competing values. Ultimately, however, that is the root of all justice.”
Id. at 497 (quoting Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir.1983) (emphasis added)). Sentencing judges, “these fact-finders,” can reasonably-and here should-part from broad averages when “attempting to gauge future events” in order to arrive at a “fairly measured” and “balanced” results for the actual individual, even though “absolute certainty is by the very nature of the effort impossible.” See id.
¶ 48. The potential disparities when fundamental demographic characteristics are disregarded are striking. For example, there is an approximately nine-year disparity between the life expectancy of a thirty-five-year-old white female (46.9 years) and a thirty-five-year-old black male (38.2 years).[10] Life-expectancy tables are one example of appropriate evidence to consider when examining life expectancy under Stewart. Judges can take judicial notice of actuarial tables, which are instantly available from a plethora of reliable sources such as the Centers for Disease Control.[11] They can be easily accessed, as Hampton’s supplemental brief states, “with a few keystrokes.”
¶ 49. The true effect of the majority’s holding is to grant the trial court the liberty of completely ignoring Stewart, the controlling precedent, when sentencing a defendant convicted of armed robbery. When a defendant shows he has received an illegal sentence, this Court must reverse. Because Hampton has shown that his sentence is illegal because it exceeds the life expectancy of a person of his age, race, and gender, I would vacate his sentence and remand for resentencing.
¶ 50. I respectfully disagree with Justice Coleman’s concurrence positing that this Court’s long-standing interpretation of Mississippi’s armed-robbery statute is unconstitutional. See Stewart v. State, 372 So.2d 257 (Miss.1979). To hold that Stewart violates the Constitution would be to ignore the principles of stare decisis and legislative ratification. Such a holding also ignores significant federal caselaw interpreting similar federal statutes, as we did in Stewart. Even if overturning Stewart were the correct result, this Court is prohibited from imposing a harsher sentence on this defendant than that permitted under our current caselaw. Such a decision would violate the prohibition on ex post facto laws. Marks v. United States, 430 U.S. 188, 192, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting Bouie v. City of Columbia, 378 U.S. 347, 353, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)) (due to the principle of fair warning inherent in the Ex Post Facto Clause, “[a]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law,” and is prohibited by the Due Process Clause of the Fourteenth Amendment); Conley v. State, 790 So.2d 773, 803 (Miss.2001).
*1010 ¶ 51. Under our Constitution, this Court is to interpret our state’s statutes, as we did in Stewart. See Mauldin v. Branch, 866 So.2d 429 (Miss.2003); Pope v. Brock, 912 So.2d 935 (Miss.2005). By amending the relevant statute without correcting this Court’s prior interpretations, the Mississippi Legislature has ratified this Court’s nearly four-decades-long interpretation that Section 97-3-79 grants only the jury, not the trial judge, the right to impose a life sentence for the crime of armed robbery. Even if this Court were now to decide that Stewart was incorrectly decided, we must “continue to apply the previous interpretation” because “such action on the part of the Legislature amounts to incorporation of our previous interpretation into the ... amended statute.” Porter v. Porter, 23 So.3d 438, 448 (Miss.2009) (Randolph, J., for the Court) (quoting Caves v. Yarbrough, 991 So.2d 142, 153 (Miss.2008) (Dickinson, J., for the Court)).
¶ 52. The armed-robbery statute states in its entirety:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
Miss.Code Ann. § 97-3-79 (Rev. 2014) (emphasis added). The sentencing statute for forcible rape uses substantially identical language, and our caselaw consistently has applied both statutes in an identical manner. Miss.Code Ann. § 97-3-65 (Rev. 2014); Lee v. State, 322 So.2d 751, 753 (1975); Stewart v. State, 372 So.2d 257 (1979). In Lee, interpreting the forcible-rape statute, we stated: “[t]he statute before us places the imposition of a life sentence within the sole province of the jury and, in our opinion, no such sentence can be imposed by a judge unless he has the authority from the jury so to do.” Lee, 322 So.2d at 753. In Stewart, we affirmed this interpretation as applied to the armed-robbery statute and held that the trial judge’s sentencing authority is limited to a “definite term reasonably expected to be less than life.” Stewart v. State, 372 So.2d 257, 259 (1979).
¶ 53. The standard established in Stewart and Lee has been consistently applied for almost four decades to both the armed-robbery and forcible-rape statutes. See Johnson v. State, 29 So.3d 738, 744 (Miss.2009); Cannon v. State, 919 So.2d 913, 916 (Miss.2005); Foley v. State, 914 So.2d 677, 692 (Miss.2005); Cox v. State, 793 So.2d 591, 599 (Miss.2001); Lawson v. State, 748 So.2d 96, 99 (Miss.1999); Lindsay v. State, 720 So.2d 182, 185 (Miss.1998); Kennedy v. State, 626 So.2d 103, 105 (Miss.1993); Luckett v. State, 582 So.2d 428, 430 (Miss.1991) (overruled on other grounds); Mitchell v. State, 561 So.2d 1037, 1038 (Miss.1990); Erwin v. State, 557 So.2d 799, 801 (Miss.1990); Evans v. State, 547 So.2d 38, 40 (Miss.1989); Watkins v. State, 500 So.2d 462, 463 (Miss.1987); Davis v. State, 477 So.2d 223, 224 (Miss.1985); Cunningham v. State, 467 So.2d 902, 906 (Miss.1985); Harper v. State, 463 So.2d 1036, 1041 (Miss.1985); Friday v. State, 462 So.2d 336, 339 (Miss.1985); Warren v. State, 456 So.2d 735, 738-39 (Miss.1984); Ware v. State, 410 So.2d 1330, 1332 (Miss.1982); Hickombottom v. State, 409 So.2d 1337, 1340 (Miss.1982); Henderson v. *1011 State, 402 So.2d 325, 328 (Miss.1981); Wilson v. State, 390 So.2d 575, 580 (Miss.1980); Parker v. State, 367 So.2d 456, 458 (Miss.1979).
¶ 54. The Legislature has, since our holding in Stewart, amended Section 97-3-65 multiple times without altering this interpretation, most recently in 1998. Under this Court’s explicit, well-established holdings regarding legislative ratification, Stewart must stand. Our current law is that:
... in cases where this Court concludes a statute was incorrectly interpreted in a previous case — we will nevertheless continue to apply the previous interpretation, pursuant to the doctrine of stare decisis, upon finding the Legislature amended or reenacted the statute without correcting the prior interpretation. In our view, such action on the part of the Legislature amounts to incorporation of our previous interpretation into the reenacted or amended statute. The Legislature is, of course, free to preclude our incorrect interpretation by specific provision, failing which, we must conclude that the legislative silence amounts to acquiescence. Stated another way, the incorrect interpretation be-. comes a correct interpretation because of the Legislature’s tacit adoption of the prior interpretation into the amended or reenacted statute.
Caves v. Yarbrough, 991 So.2d 142, 153-54 (Miss.2008) (emphasis added).
¶ 55. Under Caves, even if members of this Court believe the Stewart standard is incorrect, “we will nevertheless continue to apply the previous interpretation” because here “the Legislature amended ... the [identical] statute without correcting the prior interpretation.” Id. “An attorney should be able to present his case without fear that this Court will ignore the doctrine of stare decisis.” McFarland v. Entergy Mississippi, Inc., 919 So.2d 894, 907 (Miss.2005) (Randolph, J., concurring in part and dissenting in part). “[A] former decision of this court should not be departed from, unless the rule therein announced is not only manifestly wrong, but mischievous.” Caves, 991 So.2d at 151.
¶ 56. Deference to the Legislature’s ratification of Stewart and four decades of uncontested application should be sufficient to leave the Stewart standard in place. Stewart provides a reasonable interpretation of the statute under our principles of statutory construction. Courts must give meaning to the entirety of a statute; “[e]ach clause is to be given force and all provisions harmonized if those goals can be met. Statutes must receive a reasonable construction, reference being had to their controlling purpose, to all their provisions, force and effect being given not narrowly to isolated and disjointed clauses, but to their plain spirit, broadly taking all their provisions together in one rational view.”[12] See Adams v. Yazoo & M.V.R. Co., 75 Miss. 275, 22 So. 824 (1897); Ellison v. Mobile & O.R. Co., 36 Miss. 572, 1858 WL 4620 (1858).
¶ 57. As the syntactical progression of the clauses shows, the trial court’s sentencing authority to impose a sentence of “any term” is triggered by, and contingent on, the failure of the jury to agree that the defendant should receive a life sentence. The clause granting the jury the authority to impose a life sentence would be negated if we interpreted the statute to allow the trial judge to impose an even longer sentence if the jury did not impose life. Such an interpretation fails to read the statute as a whole and fails to give any meaningful force to the dominant clause expressly *1012 vesting the jury with the authority to impose life. The concurrence adopts an interpretation that would remove the life sentence from the exclusive purview of the jury and would permit the trial judge to sentence a defendant to a sentence exceeding the defendant’s life.
¶ 58. This Court’s traditional approach to this statute is also reflected at the federal level. Multiple circuits, including the Fifth Circuit, consistently have concluded in various similar contexts that only a jury has the authority to impose a life sentence and that the judge can impose a sentence for a term of years less than life. See United States v. Tocco, 135 F.3d 116 (2d Cir.1998), cert. denied, 523 U.S. 1096, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998); United States v. Gullett, 75 F.3d 941 (4th Cir.), cert. denied, 519 U.S. 847, 117 S.Ct. 134, 136 L.Ed.2d 83 (1996); United States v. Hansen, 755 F.2d 629 (8th Cir.1985); U.S. v. Grimes, 142 F.3d 1342, 1352 (11th Cir. 1998).
¶ 59. For these reasons, I do not accept the premise put forth by Justice Coleman that Stewart is unconstitutional and that this Court should overrule it. I also dissent from the majority’s affirming this illegal sentence, which exceeds a reasonable calculation of Hampton’s life expectancy.
KITCHENS AND KING, JJ., JOIN THIS OPINION. DICKINSON, P.J., JOINS THIS OPINION IN PART.

. The majority does not address the fact that both parties, although adversarial to each other, returned supplemental briefing agreeing that age, race, and gender should be the minimum actuarial starting point for sentencing a defendant under the armed-robbery statute.

. See http://www.cdc.gov/nchs/data/nvsr/nvsr 59/nvsr59_09.pdf (last visited October 15, 2014).

. A judge’s failure to consult tables is not grounds to reverse a sentence where there is no evidence that the resulting sentence is actually illegal. Cox v. State, 793 So.2d 591, 599 (Miss.2001).

. Jeffrey Jackson, 8 Encyclopedia of Mississippi Law § 68:69 (2014).