354 So.2d 263 (1978)
F.J. Clarke McADORY
v.
STATE of Mississippi.
No. 50121.
Supreme Court of Mississippi.
January 25, 1978.
Alton Massey, Kosciusko, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant appeals from his conviction under a charge of armed robbery in the Circuit Court of Attala County. The jury was unable to agree on punishment and the court sentenced appellant to ninety years in the penitentiary. We affirm.
Appellant alleges two assignments of error, namely: (1) The verdict of the jury was against the overwhelming weight of the testimony, mainly because the testimony of the prosecuting witness was incredible, inherently unbelievable, and unreasonable, and (2) the sentence of the lower court is unusual and excessive punishment in violation of Amend. 8 of the United States Constitution and Section 28 of the Constitution of the State of Mississippi.
Appellant did not file a motion for a new trial in the lower court. Therefore, he *264 is legally barred from prosecuting assignment of error number one. This Court has held this in many cases and clearly has set out the rule that a trial judge cannot be put in error on a matter which was not presented to him for decision, and that a contention that the verdict of the jury was contrary to the overwhelming weight of the evidence may not be raised here for the first time. Ponder v. State, 335 So.2d 885 (Miss. 1976); Young v. State, 212 Miss. 460, 54 So.2d 671 (1951); Justice v. State, 170 Miss. 96, 154 So. 265 (1934).
Due to the nature of the case and the severity of the punishment, we shall discuss the evidence which clearly shows that the jury had ample evidence to convict appellant of armed robbery.
The first witness was Mrs. David McMullan. She is an elderly person and lived with her elderly husband about ten miles southwest of Kosciusko, Mississippi, in what is known as the McVille Community. She testified that on the evening of July 20, 1976, she and Mr. McMullan had gone to bed and both were asleep. She was awakened sometime between 9:30 P.M. and midnight by a person bending over her bed with the barrel of a pistol touching her. The person said: "Don't say a word  don't you say a word or I'll kill you." Mrs. McMullan grabbed his hand and pushed the gun away, and he then stated to her, "Turn this 38 loose or I'll kill you." She awakened her husband, who asked the person to leave his wife alone. He was ordered to lay down in bed and stay there. The robber first went around and searched several purses that were hanging in the bedroom. He had a flashlight with a piece of cloth tied over the lighted end. In searching these purses and Mr. McMullan's pocketbook, he secured a total of $11. The man then told Mrs. McMullan to get out of bed but she refused so he carried her to another bedroom and sat her down on the bed. She began talking to him and begged him not to kill them. After this conversation, the person made a search of all five rooms of the house while commanding that the McMullans stay where they were. The person stayed in the house until approximately four o'clock A.M. He then left and ordered the McMullans not to call the police, saying, "I kill them bears," and that if he heard anything of the matter he was going to come back and kill them. After the person had left, Mrs. McMullan waited for sometime and then called her son-in-law.
Mrs. McMullan positively identified appellant at the trial as the person who committed the acts related above.
The second witness was Marvin Lawrence, Sheriff of Attala County. He testified that he received a call about 5:15 A.M. on the morning of July 21 regarding the incident; that he went directly to the McMullan home, arriving there about 5:30 A.M.; that he found the screen on the door on the east side of the house had been cut and the house entered from there; that he found footprints in the yard of the home; that the ground was dusty and dry, but dew was still showing. He testified that these were big footprints and that they were the only ones he found in the area. He followed the footprints out to the road where they turned to the left; that he continued following the footprints until they turned off into an old field road which came out near Jenkins Store at McVille; that the footprints then entered a gravel road and led directly to the home of appellant's grandmother where appellant was then staying.
The sheriff arrested appellant and took him to the Attala County jail. One of appellant's shoes was retained by the sheriff. He testified that he compared the shoe with the footprints and that the prints were the same size and width and corresponded with the shoe.
Witness Donald Bray testified that he was employed as an investigator with the State Highway Patrol and that his duties consisted of assisting local officers in investigation of crimes. He arrived in Attala County between 10:30 and 11 o'clock A.M. on the morning the incident occurred. He went to the McMullan home, arriving there around 1 o'clock P.M. He determined that entry to the house was made where the *265 screen had been cut from the door. He secured a purse that contained various items, sealed it in an envelope and carried it to the State Crime Laboratory in Jackson. He also made photographs of the house. He then made a plaster cast of one of the footprints shown him by Sheriff Lawrence that led from the McMullan house to the place where appellant was staying. Witness Bray took photographs of the footprints. He also secured standard inked fingerprints from appellant and carried these fingerprints and the plaster cast of one of the prints to the Crime Laboratory in Jackson.
Witness Bill Roberts testified that he was employed at the Mississippi Crime Laboratory as a criminalist, which is a person who uses scientific methods for the analysis of evidence in crime investigations. He qualified as an expert. He identified the shoe and the plaster cast of the footprint that had been delivered to the laboratory, and concluded that the plaster cast print was produced by a shoe having the same overall characteristics as appellant's shoe. He testified primarily about the prints made by the heel, saying they were the same size and had the same markings  such as nail marks and trade marks.
Witness Alex Bass testified that he was employed with the Mississippi State Crime Laboratory in the latent fingerprint development section. He qualified as a fingerprint expert. He identified an envelope that was taken from the purse delivered to the Crime Laboratory, which was the purse brought from the McMullan home that had been searched by the person committing the robbery. There were fingerprint smears and smudges but one print was identifiable on the envelope. A photograph was made of this print and it was properly developed and retained.
Witness Sam Ivy testified that he was director of the Investigative Division of the Highway Patrol; that he had twenty-five years' experience and qualified as a fingerprint expert; that the print taken from the envelope positively was identical to the left middle finger of the prints taken from appellant. The State rested after the testimony from witness Ivy.
The first witness for the defense was Della Clark, the grandmother of appellant. She testified that appellant had been staying with her since he was released from Parchman on April 30 of that year; that on the night he was accused of entering the McMullan home, the appellant left her house about 7 o'clock in the evening and returned about 3:20 A.M.; that she was up at that time taking some medicine.
The appellant took the stand and testified in his own behalf. He stated that he left home about five minutes before seven in the evening of July 20th and walked to the home of his Aunt Mary Jane and stayed there about twenty minutes; that he then left and went to the home of Jim Snow, and from there he left in a car owned and driven by his cousin, James Frank Harmon; that they rode to Thomastown and stayed there until around midnight; that about that time he ran into a "mob crowd" and was taken in custody by the constable in that district. He testified that when the constable stopped his car at the home of the justice of the peace he (appellant) got out of the car on the other side and left. During the course of the evening he had taken a shotgun from a Bernice Pearson and he took the gun and walked back to his grandmother's house, arriving there at 1:25 A.M. His explanation of his grandmother thinking he arrived at 3:20 A.M. was that at 3:20 the afternoon before he had disconnected the plug from the electric clock and that this was not known to his grandmother. He testified that he did not leave the house until arrested by the sheriff the next morning.
He further testified that he was sentenced to the Mississippi State Penitentiary in 1966 on three felony charges and had been in that vicinity only two weeks from that year until his release in April. The two weeks' release was in 1970. He denied he had ever been in the McMullan home and denied owning a flashlight. He testified that he did not own a watch, and the reason he knew he arrived at his grandmother's house at 1:25 A.M. was from the radio.
*266 No other witnesses were offered by appellant. It is noteworthy that none of the persons related by appellant to have seen him on the night of July 20 were offered as witnesses.
Therefore, we are forced to the conclusion that the jury had ample evidence to return a verdict of guilty against appellant. We reach this conclusion, as hereinbefore stated, even though the question is not properly before the Court.
We do not agree with appellant's assignment of error that the sentence of the lower court was manifestly excessive and constituted unusual and excessive punishment in violation of both the United States and the Mississippi Constitutions. Under the provisions of Mississippi Code Annotated section 97-3-79 (Supp. 1977), the jury could have imposed a life sentence. In the event the jury failed to impose sentence, as was done in this case, the lower court had the discretion under the statute to impose a life sentence.
In Ainsworth v. State, 304 So.2d 656 (Miss.), cert. denied, 422 U.S. 1012, 95 S.Ct. 2637, 45 L.Ed.2d 676 (1975), this Court said: "It is well settled that the imposition of a sentence is within the discretion of the trial court and this Court will not review the sentence if it is within the limits prescribed by statute." See also Flake v. State, 296 So.2d 692 (Miss. 1974); Boone v. State, 291 So.2d 182 (Miss. 1974); McCormick v. State, 279 So.2d 596 (Miss. 1973); Crapps v. State, 221 So.2d 722 (Miss. 1969).
Therefore, we conclude that the sentence of 90 years imposed by the lower court was within the statutory limitation and from the record in this case, the Court cannot say that this sentence was cruel, unusual or excessive punishment. The cause is therefore affirmed.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.