## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 97-KA-00313-SCT

*ROGER L. JACKSON a/k/a ROGER LEE JACKSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/06/97 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PERCY S. STANFIELD |
| | BEVERLY D. POOLE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 5/6/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/27/99 |

**BEFORE PRATHER, C.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Appellant Roger L. Jackson appeals his conviction for manslaughter in the Circuit Court of the First Judicial District of Hinds County. Judge Robert L. Gibbs sentenced Roger to a term of twenty years in the custody of the Mississippi Department of Corrections with eight years suspended, five years supervised probation, and twelve years to serve. On appeal, he assigns the following issues as error:

**I. WHETHER THE TRIAL COURT ERRED IN FAILING TO REDUCE THE CHARGE IN THE INDICTMENT TO MANSLAUGHTER AFTER THE CLOSE OF THE STATE'S CASE AND AFTER THE CLOSE OF ALL PROOF IN THE CASE**

**II. WHETHER THE TRIAL COURT ERRED BY IMPOSING AN EXCESSIVE SENTENCE ON THE DEFENDANT**

**III. WHETHER THE VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT**

OF THE EVIDENCE

## STATEMENT OF THE FACTS

¶2. Roger Jackson was 15 years old on April 7, 1996 when he killed 17 year old John Jones a/k/a "Eky." Eky was a "neighborhood bully" who often robbed smaller children in the Cherry Street area, taking their bicycles, toys and money. Shadrick Simmons, one of the area children, saw Eky shoot at people a couple of times and once saw him shoot at a car as it drove off. Roger had been previously robbed by Eky three times and had also seen Eky shoot at other people in the streets. In 1995, Eky choked the smaller Roger until he was "halfway unconscious."

¶3. Eky once pulled a gun on Roger's brother, Tobbie, when Tobbie attempted to prevent Eky from robbing another child of his bicycle. In response to Eky's brigandage, Roger " . . . plenty times. . ." told the police that Eky had robbed him and was threatening him. However, the police never responded. A neighbor, Reginald Webster, opined that in general police officers did not respond well to calls from residents of Cherry Street. This City of Jackson neighborhood was described at trial as crime ridden - - - rampant with shootings, assaults, drug deals, robberies and vandalism.

¶4. Eky often ran with the Womack brothers who were also known for their violent lawlessness. Roger once saw Eky hit Shadrick Simmons in the face, leaving him in tears, while Eky and the Womack brothers were stealing $20 from Shadrick during a gang pat-down.

¶5. On the day of the killing, Eky rode to Roger Jackson's home on a small child's bicycle he had stolen from a young neighbor, Michael Davis. Wallace Jackson, Roger's cousin, was also present that day. Eky sought to borrow $10.00 from Roger. When Roger said he didn't have $10.00, Eky said, "Man, you lying. Bro, I know you got $10.00." Eky then began cursing and stated, ". . . you better *not* be here when I get back; if you are, I'm going to rob you!" As he departed, Eky changed his mind and told Roger that if he was not around when Eky returned, Eky would "shoot up his house." Roger's brother, his brother's girlfriend, and their two-month old baby were all inside the house. Roger testified that in the past Eky had been armed almost every time he saw him. Taking Eky's threats to heart, Roger retrieved a Glock 17 9mm handgun from his home, telling Wallace, "Man, I believe he's fixing to try something."

¶6. Eky returned to the Jackson house after about twenty or thirty minutes and again began verbally abusing Roger and demanding $10.00 which he now claimed Roger owed him as he straddled the small stolen bicycle. Eky said, "Y'all go get y'all pistol cause I got mine." Eky inched the bike forward to within two or three feet of Roger saying "Bitch, go get your pistol because I already got mine." Eky then lifted his shirt to reveal a picture of his dead brother, stating that he "put it on his brother's grave" that he would "start back robbing." He said, "It don't matter if you're big or small, I'm taking it all." He told Roger that he better not say "anything crazy" or he would shoot him. Eky then made a flinching motion and "dropped his hand down" so that he was holding only one of the handlebars on the bike. In response to these provocations, Roger pulled the gun from his back pocket and began shooting, holding the safety of the gun in so that it would fire more than once. Roger shot Eky five times, and stated that he "didn't even pay no attention" as to whether Eky was armed. Roger held the gun over Eky after he shot him as Eky struggled to get up.

¶7. The medical examiner found that bullets entered the front, both sides, and back of Eky's body. However, the examiner could not say who changed position as the wounds were inflicted, the victim or the shooter.

## I. WHETHER THE TRIAL COURT ERRED IN FAILING TO REDUCE THE CHARGE IN THE INDICTMENT TO MANSLAUGHTER AFTER THE CLOSE OF THE STATE'S CASE AND AFTER THE CLOSE OF ALL PROOF IN THE CASE

¶8. Roger suggests that the facts in this case clearly indicate self-defense, and that only a manslaughter instruction should have been given. He suggests the manslaughter conviction was only a compromise verdict and that without the murder instruction, there might have been no conviction at all. While this argument is tempting under the facts of this case, we have previously found such a decision to be a jury issue:

> A person may form an intent to kill from a sudden passion induced by insult, provocation or injury from another. In that moment of passion, while still enraged, if he slays the other person, the homicide may be manslaughter, even though it is not in necessary self-defense, depending upon the insult, provocation or injury causing the anger. Ordinarily, whether such a slaying is indeed murder or manslaughter is a question for the jury. *Kinkead v. State*, 190 So.2d 838 (Miss. 1966); *Anderson v. State*, 199 Miss. 885, 25 So. 2d 474 (1946).

*Windham v. State*, 520 So. 2d 123, 127 (Miss. 1987).

¶9. Sufficient factual disputes existed in this case to require jury resolution of whether the killing was murder, manslaughter or justifiable homicide. Roger admitted he never saw Eky with a gun on the day of the incident, and he admitted he was not looking for a weapon. Witnesses testified that Eky had nothing in his hands when he was shot. In addition, Eky had apparently threatened Roger and he left promising to return. Rather than fleeing, Roger retrieved his gun, loaded it, and returned to face Eky. Evidently Roger had decided to end Eky's life of crime upon his return since he testified, "Well, I was going to wait and try to, like, catch him reaching for his (gun)and try to get him before he got to me." Reginald Webster even testified that Roger held a gun over Eky after he shot him as Eky struggled to get up. These factual issues required jury resolution, and the giving of both the murder and manslaughter instructions was proper.

## II. WHETHER THE TRIAL COURT ERRED BY IMPOSING AN EXCESSIVE SENTENCE ON THE DEFENDANT

¶10. The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Mississippi Constitution, Article 3, Section 28 provides: "Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed." Eighth Amendment jurisprudence is well settled. In 1980, the United States Supreme Court issued its mandate in *Rummel v. Estelle*, 445 U.S. 263 (1980). In *Rummel*, the United States Supreme Court found that the sentence imposed on the petitioner was not in violation of the Eighth Amendment and stated that with the exception of capital punishment cases, "successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272. *Rummel* states, "[O]ne could argue without fear of contradiction . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel*, 445 U.S. at 274.

¶11. In 1986, this Court clearly upheld the constitutionality of our habitual offender statute while recalling our adoption of *Rummel* in 1981. *Bridges v. State*, 482 So. 2d 1139, 1140 ( Miss. 1986)(citing *Baker v. State*, 394 So. 2d 1376 (Miss. 1981)). We stated in *Baker*:

> We have long held that a sentence which does not exceed statutory limits is not cruel or unusual

punishment. *McAdory v. State*, 354 So. 2d 263 (Miss. 1978); *Ainsworth v. State*, 304 So. 2d 656 (Miss. 1975), cert. denied, 422 U.S. 1012, 95 S.Ct. 2637, 45 L.Ed.2d 676 (1975); *Clanton v. State*, 279 So. 2d 599 (Miss. 1973). These decisions and numerous others recognize the principle of legislative discretion in determining the proper punishment for criminal offenders and we think this accords with *Rummel* . . . .

*Baker*, 394 So. 2d at 1378.

¶12. In *Barnwell v. State*, 567 So. 2d 215, 219 (Miss. 1990), we discussed *Rummel* and a distinctive United States case, *Solem v. Helm*, 463 U.S. 277 (1983), and held:

In cases factually similar to *Rummel*, *Rummel* provides the rule. Apart from the factual context of *Solem*-a sentence of life in prison without the possibility of parole-or a sentence which is manifestly disproportionate to the crime committed (e.g. life sentence for overtime parking, *see, Rummel* 445 U.S. at 274 n.11, 100 S. Ct. at 1139 n.11) extended proportionality analysis is not required by the Eighth Amendment.

*Barnwell*, 567 So. 2d at 221(citations omitted). We upheld our adoption of the Supreme Court's theme of deference to the legislature in determining punishment and to the trial court in sentencing. *Id.* at 222. The United States Supreme Court later overruled the bulk of the law created in *Solem* when it stated:

. . . we have addressed anew, and in greater detail, the question of whether the Eighth Amendment contains a proportionality guarantee- - with particular attention to the background of the Eighth Amendment (which *Solem* discussed in only two pages, see 463 U. S., at 284-286) and to the understanding of the Eighth Amendment before the end of the 19th century (which *Solem* discussed not at all). We conclude from this examination that *Solem* was wrong; the Eighth Amendment contains no proportionality guarantee.

*Harmelin v. Michigan*, 501 U.S. 957, 965 (1991).

¶13. We reiterated our stance in 1996 stating: "'This Court has consistently held that a sentence will be upheld if within statutory limits. Also, where a sentence does not exceed statutory limits, it does not constitute cruel and inhuman treatment.'" *Sanders v. State*, 678 So. 2d 663 (Miss.1996)(quoting *Adams v. State*, 410 So. 2d 1332, 1334 (Miss. 1982)).

¶14. We agree with the United States Supreme Court that "'Eighth Amendment judgments should not be, or appear to be, merely the subjective views of individual Justices; judgment should be informed by objective factors to the maximum possible extent.'" *Rummel,* 445 U.S. at 274-75(quoting *Coker v. Georgia*, 433 U.S. 584, 592 (1977)).

¶15. In keeping with our prior decisions, we find no excessive sentencing error since Roger's sentence was within the statutory limits of Miss. Code Ann. § 97-3-25. Within the statutory framework, sentencing is left to the sound discretion of the trial judge. The constitutionality of the statute itself is the only remaining issue. If the statute is valid, its appropriate application will also be valid. We find no viable challenge to the constitutionality of Miss Code Ann. § 97-3-25.

¶16. Roger argues that the court should have considered alternative sentencing since he was a juvenile; however, no statute mandates that alternative sentences for juveniles be considered. Absent such a

statutory mandate, we find no error.

### III. WHETHER THE VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE

¶17. We must now decide whether the trial court abused its discretion in denying Roger's motion for a new trial on the grounds that the verdict was against the overwhelming weight of the evidence. *Catchings v. State*, 684 So. 2d 591, 600 (Miss. 1996). *Johnson v. State* instructs us that the standard of review for such post trial motions is an abuse of discretion. *Johnson v. State*, 642 So. 2d 924, 928 (Miss. 1994). We shall not order a new trial nor disturb a jury verdict unless we are convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would "sanction an unconscionable injustice." *McNeal v. State*, 617 So. 2d 999, 1009 (Miss. 1993)(additional citations omitted).

¶18. In this case, the jury apparently decided not to reward Roger for his vigilantism by setting him free. On the other hand, he was not convicted of murder. The Hinds County jury was the appropriate arm of justice to make this decision when confronted by these difficult facts. Sufficient evidence exists to support the jury verdict, and we find no error in this regard.

¶19. The determination of justifiable self-defense vel non was within the province of the jury. The sentence imposed was within the learned judge's discretion. Therefore, we affirm the judgment of the Hinds County Circuit Court.

¶20. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS WITH EIGHT (8) YEARS SUSPENDED, FIVE (5) YEARS SUPERVISED PROBATION AND TWELVE (12) YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**