KING, Justice,
dissenting:
¶ 40. Because I believe that Foster’s sentence is illegal, as it is not reasonably less than his life, I dissent. Because I believe that the majority’s rendition of the facts is incomplete, I begin with a recitation of those facts.
¶ 41. On December 2, 2009, the Bank of Franklin was robbed. The police eventually arrested Donald Wilson, Tyrone Butler, and Eric Foster for the robbery. Foster was indicted for armed robbery and tried on October 18, 2011. That same day, the jury found him guilty, and the trial court held a sentencing hearing.[8] Immediately after the jury was excused, the trial court stated: “let the record show that the Court finds that there will be no need to order a pre-sentence investigation in this matter, and the Court will proceed with sentencing.” (Emphasis added.) The trial court did not give the defendant any time to prepare for sentencing or any options regarding sentencing. In a bench ruling, the trial court sentenced Foster to forty years, and Foster did not make a contemporaneous objection. In its written sentencing order, the trial court stated that it “considered the seriousness of the crime, the impact on the victims, and the defendant’s prior conviction for aggravated assault and his age of thirty-five.”[9] Foster *1027 filed a motion for judgment notwithstanding the verdict and a motion for new trial, neither of which challenged his sentence. The trial court denied both motions, and Foster appealed, arguing that the verdict was not supported by the weight of the evidence and that his sentence is illegal, as it exceeds a term reasonably expected to be less than life. The Court of Appeals affirmed the trial court. Chief Judge Lee, joined by three other judges, concurred in part and dissented in part, arguing that Foster’s sentence is illegal. Foster petitioned this Court for a writ of certiorari on the sole issue of whether his sentence is illegal, and we granted his petition.
¶ 42. On February 21, 2014, on its own motion, this Court found supplemental briefing to be necessary, and ordered the parties to brief the following issues:
1)Does Mississippi Code Section 97-8-79 preclude a trial judge from imposing a sentence of a term of years in excess of a defendant’s life expectancy when the jury has not imposed a sentence of life?
2) If Mississippi Code Section 97-3-79 allows a trial judge to impose a sentence in excess of a defendant’s life expectancy where the jury has not imposed a life sentence, was Stewart v. State therefore wrongly decided?
3) If Stewart v. State was wrongly decided, does the doctrine of stare deci-sis nonetheless bind this Court to the interpretation of Mississippi Code Section 97-3-79 made by the Court in Stewart?
¶43. The parties timely filed supplemental briefs addressing these issues, as requested by the Court.

ANALYSIS

¶ 44. “If no contemporaneous objection is made at trial, a party must rely on the plain error rule to raise the assignment of error on appeal.” Flora v. State, 925 So.2d 797, 811 (Miss.2006). The plain error doctrine applies when an error exists and that error caused a manifest miscarriage of justice. Id. “The plain error rule will only be applied when a defendant’s substantive or fundamental rights are af- *1028 fectedId. “[Defendants have a fundamental, constitutional right to be free from illegal sentences,” thus a challenge to the legality of a sentence raised for the first time on appeal may be reviewed for plain error. Harris v. State, 99 So.3d 169, 172 (Miss.2012). The majority argues that Cox v. State requires we apply a procedural bar to Foster’s argument, but the majority misconstrues the holding in Cox. Maj. Op. ¶ 10, Cox v. State, 793 So.2d 591 (Miss.2001). In Cox, this Court found the argument procedurally barred because the defendant “provided this Court with nothing but his own musings. He has not provided this Court with ... anything ... that may qualify as evidence. Nor has he shown that the judge’s estimation of the life expectancy of a black male was incorrect.” Cox, 793 So.2d at 599 (emphases added). Conversely, Foster presents this Court with evidence in the form of actuarial tables, of which we may take judicial notice, indicating that his sentence lies outside the statutory limits and showing that “the judge’s estimation of the life expectancy of a black male was incorrect.” See id. The majority also insists on citing the inapposite Long v. State[10] in support of procedural bar, yet misrepresents what it held, stating that it held that a defendant “who had failed to object at trial that his sentence ‘amounted to’ a life sentence was procedurally barred from raising the issue at the appellate level.” Majority ¶ 10. Long was an appeal from a denial of a motion for post-conviction relief. Contrary to holding that Long was procedurally barred from failing to object to his sentence at trial, the court held that “Long did not raise this issue before the trial court in his motion for post-conviction relief. Therefore, this issue is procedurally barred.” Long v. State, 982 So.2d 1042, 1045 (Miss.Ct.App.2008) (emphasis added). Moreover, the sentence in that case was not illegal, and thus not subject to the procedural bar applicable in this case.[11]
¶ 45. Once convicted of armed robbery, the statute provides that a defendant “shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life *1029 in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.” Miss.Code Ann. § 97-3-79 (Rev. 2014). Therefore, the Legislature determined that only the jury may fix a life sentence.
¶ 46. In such cases in which the court fixes the sentence, the court may not sentence the defendant to a life term, but must sentence the defendant to a term reasonably expected to be less than life. Stewart v. State, 372 So.2d 257, 258 (Miss.1979). Thus, we must follow the mandate in Stewart that when a court, rather than a jury, fixes the sentence of a defendant under the armed robbery statute, the sentence must be “a definite term reasonably expected to be less than life.” Stewart, 372 So.2d at 259.
¶ 47. In determining an appropriate sentence, the trial court should “make a record of and consider all relevant facts necessary to fix a sentence for a definite term reasonably expected to be less than life.” Stewart, 372 So.2d at 259 (emphases added). The Court in Stewart held that the trial court “should consider the age and life expectancy of the defendant and any other pertinent facts which would aid in fixing a proper sentence.” Id. (emphases added). It is very clear that, when determining a sentence that must be “less than life,” the trial court must consider the life expectancy of the defendant in order to determine a sentence length that is reasonably expected to amount to “less than life.” A court may not sentence a defendant to an extraordinarily lengthy term of years in order to circumvent the requirement that only a jury may impose a life sentence. I would not hold that life expectancy must be the sole basis of a sentence for armed robbery. Indeed, a court should consider “any other pertinent facts which would aid in fixing a proper sentence.” Id. However, in considering these facts, the trial court operates under a statutory maximum in that the sentence must be reasonably less than life. In other words, the statute mandates that a trial court must cap its sentence at a term reasonably less than the defendant’s life. The statute does mandate that an armed robbery sentence must be reasonably less than life, rendering a defendant’s reasonable life expectancy as the statutory maximum. As with any sentencing scheme with a statutory maximum, the trial court should consider many factors in sentencing, but may not exceed the statutory maximum when handing down the ultimate sentence.
¶ 48. The trial court in this case utterly failed to consider Foster’s life expectancy, as Stewart requires it to do. The majority indicates that the trial court’s consideration of Foster’s age alone was sufficient. Maj. Op. ¶ 21. The trial court’s consideration of Foster’s age, but not his life expectancy, is simply not sufficient under our caselaw.
¶ 49. While it is certainly advisable that a defendant put some evidence of his life expectancy before the trial court,[12] it is ultimately the judge’s responsibility to consider the defendant’s age and life expectancy and any other pertinent factors before sentencing him under Section 97-3-79. The trial court cannot hope to ensure a sentence reasonably less than life without considering how long “life” for that defendant is. I do not imply that a judge should have to conduct an extensive search for evidence with which to examine sentencing factors. It is incumbent upon both *1030 parties to put on evidence so that the judge may make findings of fact. Where neither party does so, it is incumbent upon the judge to insist that a proper record be made and actually make findings of fact, something that did not occur here regarding life expectancy. I believe that this Court has become lax in enforcing appropriate standards for sentencing hearings, and that we have not demanded excellence from all parties below. The time has come to reverse course and demand that an appropriate sentencing record be made in all cases. The State, the defense, and the trial court should ensure that a record is made regarding all factors necessary to a sentencing decision, and the trial court should make appropriate findings of fact.
¶ 50. Trial courts must examine the evidence to determine a reasonable, educated estimate as to a defendant’s life expectancy. Moreover, a trial court must do so to follow the Legislature’s dictates that the sentence be less than life. The trial court in this case did absolutely nothing to estimate Foster’s life-expectancy — it failed to consult actuarial tables, evidence of Foster’s health, or anything else at all as relates to Foster’s life expectancy, a factor that it is required to consider in determining an armed robbery sentence.
¶ 51. After its complete failure to consider Foster’s life expectancy, the trial court sentenced Foster to forty years in prison.[13] On appeal, Foster presents actuarial tables that indicate that forty years exceeds Foster’s life expectancy. Courts may take judicial notice of mortality or actuarial tables. Henderson v. State, 402 So.2d 325, 328 (Miss.1981); Churchill v. Pearl River Basin Dev. Dist., 757 So.2d 940, 945 (Miss.1999). According to actuarial tables, Foster, thirty-five year old black male, has a life expectancy between 37.9 and 38.2 years.[14] National Vital Statistics Reports, Vol. 59, No. 9, September 28, 2011, located at http://www.cdc.gov/nchs/ data/nvsr/nvsr59/nvsr59_09.pdf (last visited October 14, 2014). “The purpose of referring to these tables is merely to invalidate those sentences that are of such a duration that, given the age of the defendant, they are clearly the equivalent of a sentence of life imprisonment.” Martin, 115 F.3d at 455. That is precisely what we should do here. To be sure, I would in no way mandate that a trial court use life expectancy tables to set a sentence reasonably expected to be less than life. But in the absence of any other evidence whatsoever — indeed, with the complete failure of *1031 the trial court to even consider Foster’s life expectancy — we may and should take judicial notice of life expectancy tables and invalidate a sentence, such as Foster’s, that is the equivalent of life imprisonment when a life sentence is forbidden.
¶ 52. Life expectancy, or actuarial, tables are commonly used in courts in sentencing. See, e.g., People v. Taylor, 9 N.Y.3d 129, 848 N.Y.S.2d 554, 878 N.E.2d 969, 997 n. 6 (2007) (“Life expectancy tables ... are so commonly used in the courts that they are included in the Pattern Jury Instructions.”); N.D. Sup.Ct. Admin. R. 51 (“In determining the sentence imposed upon [certain offenders] ... the trial court shall compute the remaining life expectancy of the offender by reference to Table A (Expectation of life by age, race, and sex) of’ the CDC reports.); State v. Ragland, 836 N.W.2d 107, 119 (Iowa 2013) (using “standard mortality tables” to determine life expectancy); State v. Ross, 71 Wash.App. 556, 861 P.2d 473, 484 (1993) (under the sentencing scheme, “all sentences except life in prison without the possibility of parole must be determinate. Thus, the only way to impose a life sentence for the myriad crimes for which life is the maximum penalty is to determine what the defendant’s life expectancy is likely to be.... As [life expectancy tables] have long been accepted by the courts for [awarding damages], we can see no reason why they should not be viewed as a reliable basis for determining how long a life sentence in a criminal case should be.”); United States v. Ferranti, 928 F.Supp. 206, 216 (E.D.N.Y.1996) (using life-expectancy table to avoid sentencing defendant to “a life sentence in fact”). The majority cites Johnson v. State in support of its proposition that life-expectancy charts are of “limited utility,” a dicta statement by the Court in Johnson. Johnson v. State, 29 So.3d 738, 744-45 (Miss.2009). As seems a pattern with the majority, Johnson is completely inapplicable to the case at hand. Johnson, a habitual offender convicted on three counts of armed robbery, cited an actuarial life expectancy of 41.7 years, and then claimed that his forty-one year sentence was “effectively” a life sentence, despite it being less than his actuarial life expectancy. Id. at 744.
¶ 53. The Court of Appeals determined that Foster’s sentence was not illegal because it did not exceed the life expectancy for a thirty-five-year-old “American citizen,” without reference to age or gender. This Court and the Court of Appeals have traditionally used individual characteristics such as age, gender, and race, as well as other appropriate particularized considerations such as health and height, when considering life expectancy. See Arrington v. State, 411 So.2d 779, 780 (Miss.1982) (using the life expectancy of the average seventeen-year-old black male); Henderson, 402 So.2d at 329 (using the life expectancy of the average twenty-two-year-old black male) (“While the mortality tables are used only as guides in determining life expectancy, those tables along with the absence in the record of any physical impairment or illness of the appellant, must have convinced the trial judge” that the sentence was reasonably expected to be less than life.); Trammell v. State, 62 So.3d 424, 432 (Miss.Ct.App.2011) (using life expectancy for a person of the defendant’s “age, sex, and race”). Taking into account particular circumstances when determining life expectancy is both appropriate and preferable because large variations may occur among the life expectancies of different populations.[15] Indeed, using the *1032 life expectancy of the “average American” disproportionately harms both males and African Americans.[16]
¶ 54. The majority relies on cases that have no bearing on the case at hand to claim that this Court has upheld sentences that “amount to” life sentences. In Lindsay, this Court noted that Lindsay failed to present any evidence of life expectancy at any stage, not just at sentencing, as claimed by the majority. Maj. Op. ¶ 18; Lindsay v. State, 720 So.2d 182, 186 (Miss.1998) (“Lindsay cannot argue his sentence is in effect a life sentence when he offers only opinion as to what that life expectancy will be.”). In fact, Lindsay was a case on a motion for post-conviction release, in which Lindsay was expected to present evidence that was not before the trial court. Foster does not fail to present evidence other than opinion. Rather, he presents us with life expectancy tables. Moreover, this Court also stated that “[t]his Court in several cases, has upheld sentences that neared what could be considered life sentences while taking into account the defendant’s life expectancy.” Id. Foster’s sentence does not near his life expectancy; it exceeds it.
¶ 55. The majority then cites several cases that are completely inapposite, as they involve a proportionality review, and have nothing whatsoever to do with a sentence that is statutorily limited to being less than life. Indeed, the majority cites Cannon v. State for its position that a sentence may exceed the life expectancy of a defendant, despite this Court specifically distinguishing the case from the line of cases under the armed robbery statute. Cannon v. State, 919 So.2d 913 (Miss.2005). Cannon interpreted a statutory scheme that provided that the maximum sentence was a term of years, not a term reasonably less than life, as the armed robbery statute provides. Id. The majority tellingly omits the portion of Cannon which specifically distinguishes it from Stewart and holds the armed robbery line of cases to be inapplicable to cases in which the maximum sentence is a term of years:
We find that the inherent problem with reliance upon Handford is that its holding is based upon Stewart, an armed robbery case. The crime of armed robbery has specific sentencing requirements separate and distinct from drug *1033 cases. The armed robbery statute, Miss.Code Ann. § 97-3-79 (Rev. 2000), provides:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
(emphasis added). Therefore, a jury may impose a penalty of life imprisonment for the crime of armed robbery pursuant to the statute. If a jury does not fix a sentence of life imprisonment, then a trial judge may determine a sentence within certain limits. This Court has held that a trial judge’s sentencing in armed robbery cases is limited to a definite term reasonably expected to be less than life. Stewart v. State, 372 So.2d 257, 259 (Miss.1979); see also Lindsay v. State, 720 So.2d 182, 185 (Miss.1998). However, this rule does not apply in a drug case such as the one before the Court today.
Cannon v. State, 919 So.2d at 915-16. See also Tate v. State, 912 So.2d 919 (Miss.2005) (examining a sentence for proportionality under the Eighth Amendment, under a statutory scheme with a maximum of a term of years); Mosley v. State, 104 So.3d 839 (Miss.2012) (examining a sentence for proportionality under the Eighth Amendment, under a statutory scheme with a maximum of a term of years); Williams v. State, 794 So.2d 181 (Miss.2001) (examining a sentence for proportionality under the Eighth Amendment, under a statutory scheme with a maximum of a term of years), overruled by Brown v. State, 995 So.2d 698 (Miss.2008). In this case, we examine the rather unique circumstance of a statute in which the sentencing judge has been stripped by the Legislature of the authority to sentence a defendant to life imprisonment. Cases examining the proportionality of a sentence under a sentencing statute with no such limitation are completely inapposite.
¶ 56. Not only did the trial court fail to consider and make a record of life expectancy when fixing Foster’s sentence, but Foster presented us with objective, reliable evidence that his sentence is illegal, as it is not reasonably expected to be less than life. Foster’s illegal sentence violates his fundamental rights and thus amounts to plain error. I would therefore affirm Foster’s conviction and vacate his sentence for armed robbery.
¶ 57. I also respectfully disagree with the Special Concurrence in its determination that the notion that the Court created the standard that a judicially imposed sentence pursuant to the armed robbery statute be less than the life expectancy of the defendant. This Court is vested with the power to interpret the law. If every statute were plain and unambiguous and could be read literally, we would not have much need for the courts. The duty of this Court “is to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case. Whether the Legislature intended that interpretation, we can only hope, but we will never know.” Pope v. Brock, 912 So.2d 935, 936 (Miss.2005). When a statute is ambiguous, this Court must interpret it. “Interpreting using the rule of statutory construction simply *1034 means we look for clues in certain time-honored rules as well as other places in order to apply the most reasonable interpretation of the statute’s language and intent.” Id. The Special Concurrence would essentially eliminate this Court’s power to interpret vague or ambiguous statutes, limiting the Court to only the literal words of a statute, even when they are vague or ambiguous.
¶ 58. The armed robbery statute provides that a defendant, once convicted, “shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.” Miss.Code Ann. § 97-3-79 (Rev. 2014). Therefore, the Legislature determined that only the jury may fix a life sentence.
¶ 59. In such cases in which the court fixes the sentence, the court may not sentence the defendant to a life term, but must sentence the defendant to a term reasonably expected to be less than life. Stewart v. State, 372 So.2d 257, 258 (Miss.1979). Stewart was decided on the heels of two contradicting cases, Lee v. State and McAdory v. State. Lee v. State, 322 So.2d 751 (Miss.1975); McAdory v. State, 354 So.2d 263 (Miss.1978), overruled by Stewart, 372 So.2d at 259. In Lee, the Court examined the forcible rape statute, which provided that the defendant
upon conviction shall be imprisoned for life in the state penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty in the state penitentiary for any term as the court, in its discretion, may determine.
Lee, 322 So.2d at 753 (quoting Miss.Code Ann. § 97-3-65 (Supp.1974)). The Court found that under Section 97-3-65, a trial judge may not impose a sentence of life when the jury has failed to do so. Lee, 322 So.2d at 753. It held that
The statute before us places the imposition of a life sentence within the sole province of the jury and, in our opinion, no such sentence can be imposed by a judge unless he has the authority from the jury so to do. The statute presupposes, absent a jury recommendation of life imprisonment, that the judge will sentence the defendant to a definite term reasonably expected to be less than life.
Id. McAdory, on the other hand, examined the armed robbery statute and found that “[i]n the event the jury failed to impose sentence, as was done in this case, the lower court had the discretion under the statute to impose a life sentence.” McAdory, 354 So.2d at 266.
¶ 60. Stewart noted the conflicting decisions on the question of whether a sentence exceeding the defendant’s life expectancy under the armed robbery statute is excessive as being for a longer time period than permitted by statute. Stewart, 372 So.2d at 258. After examining the rationale behind both Lee and McAdory, a unanimous Court found that Lee “announce[d] a sounder rule” and thus overruled McAdory. Id. at 259. The Special Concurrence advocates overruling Stewart and substituting a new interpretation of Section 97-3-79. It argues that the statute means merely that the trial court must sentence a defendant to “any sentence greater than three years,” opining that even a sentence of one hundred years does not violate the statute. Sp. Concur. ¶ 31. The Special Concurrence’s view, however, determines that the statute in question has no limits. Under the Special Concur *1035 rence’s view, a trial court judge could sentence an offender to three hundred years,[17] and it would be a statutorily acceptable sentence. Such an interpretation renders the Legislature’s specific determination that only a jury may sentence an offender to life completely meaningless. Thus, in my view, the Special Concurrence suggests usurping legislative authority and replacing the Legislature’s sound and clear judgment as to the limit on sentences with its own judgment that sentences under Section 97-8-79 may be any term of years whatsoever. Not only does this contravene the statute itself, it contravenes the notion that “criminal statutes must be strictly construed in favor of the accused.” Lewis v. State, 765 So.2d 493, 499 (Miss.2000). As the Seventh Circuit notes, “where a legislatively enacted sentencing scheme has expressly deprived a court of the possibility of imposing a life sentence, a sentence for a term of years exceeding the defendant’s approximate life expectancy would ordinarily constitute an abuse of discretion.” United States v. Martin, 115 F.3d 454, 455 (7th Cir.1997) (internal quotations omitted); United States v. Prevatte, 66 F.3d 840, 843 (7th Cir.1995); see also United States v. Gullett, 75 F.3d 941, 950 (4th Cir.1996) (the absence of a jury recommendation for a life sentence “disempowered the sentencing judge to choose between a life term and a term of years, so if he used a term of years to impose a life sentence he was evading a limitation on his authority” (quoting Prevatte, 66 F.3d at 847 (Posner, J., concurring))). Thus, Stewart was clearly correctly decided and we rightly continue to follow its mandate that when a court, rather than a jury, fixes the sentence of a defendant under the armed robbery statute, the sentence must be “a definite term reasonably expected to be less than life.” Stewart, 372 So.2d at 259. To hold otherwise would allow the sentencing judge to evade the legislatively imposed limit on his authority.
¶ 61. However, even assuming the Court’s interpretation in Stewart of Section 97-3-79 was incorrect, I disagree with the Special Concurrence’s position that this Court should overrule the Court’s unanimous decision in Stewart, a decision that has stood for thirty-five years. The doctrine of stare decisis “proceeds from that first principle of justice, that, absent powerful countervailing considerations, like cases ought to be decided alike.” State ex rel. Moore v. Molpus, 578 So.2d 624, 634 (Miss.1991). It stands for the proposition “that long established legal interpretations ought not lightly be disturbed.” Id.
The doctrine of stare decisis is the bedrock of our system of jurisprudence. It *1036 has given direction and stability to the common law whose precepts constitute the larger part of the rules by which we live and are governed. It demands definiteness in the law, and that its rules be consistent so that they may be known. It has been said to be the most fundamental characteristic of the common law as distinguished from other systems.
Id. (quoting Laurel Daily Leader, Inc. v. James, 224 Miss. 654, 80 So.2d 770, 780-81 (1955) (Gillespie, J., Special Opinion)). Because of the importance of stare decisis, overturning settled caselaw requires more than a mere academic or historical demonstration of error. Molpus, 578 So.2d at 635. In finding error, this Court must “look largely in the area of public or widespread disadvantage[,]” and will not overrule longstanding “precedent unless it is ‘pernicious,’ ‘impracticable,’ or is ‘mischievous in its effect, and resulting in detriment to the public.’” Id. (internal citá-tions omitted). Thus, when a holding has produced “great and substantial harm,” i.e., “over time the precedent has repeatedly had a substantial adverse or significantly harmful effect upon the people,” overruling that precedent may be appropriate. Id. In this case, the State has not described any instances in which the Stewart holding caused any harm whatsoever, much less great and substantial harm.
¶ 62. Furthermore, a weighty factor in a challenge to precedent is whether people have “justifiably placed their faith” in the prior precedent, and the fact that there exists a “the need to have [the] law settled so that [the people] may rely upon it.” Id. at 637. “[P]ublic confidence in the law requires substantial stability in the face of’ changes with the times and judicial personnel.[18] Id. at 638. “Popular and professional confidence in the judiciary rests on the impersonality of decisions and their reasoned foundation, which in turn are *1037 built upon the respect accorded them by-successor justices and by their staying power.” Id. “Principled consistency and respect for precedent promote acceptance. They reflect a consensus about law. They contribute to the notion that law binds judges as well as litigants, and not just when we agree. Good judges know this and will change legal interpretations only for the most persuasive reasons.” Id. at 638-39.
¶ 63. Moreover, since the decision in Lee, the Legislature has amended Section 97-3-65 five times. Laws 1977, Ch. 458, § 7; Laws 1985, Ch. 389, § 3; Laws 1993, Ch. 497, § 1; Laws 1998, Ch. 549, § 2; Laws 2007, Ch. 335, § 1. None of the five amendments that have occurred in the thirty-nine years since Lee was decided has changed the sentence for forcible rape. When this Court finds that a statute was incorrectly interpreted in a previous case, it
will nevertheless continue to apply the previous interpretation, pursuant to the doctrine of stare decisis, upon finding the Legislature amended or reenacted the statute without correcting the prior interpretation. In our view, such action on the part of the Legislature amounts to incorporation of our previous interpretation into the reenacted or amended statute. The Legislature is, of course, free to preclude our incorrect interpretation by specific provision, failing which, we must conclude that the legislative silence amounts to acquiescence. Stated another way, the incorrect interpretation becomes a correct interpretation because of the Legislature’s tacit adoption of the prior interpretation into the amended or reenacted statute.
Porter v. Porter, 23 So.3d 438, 448 (Miss.2009) (quoting Caves v. Yarbrough, 991 So.2d 142, 153-54 (Miss.2008)). The Legislature has tacitly adopted the interpretation in Lee not once, not twice, but five times, thus incorporating the interpretation into the statute. The sentencing provision and reasoning in Lee are essentially identical to those in Stewart. Furthermore, the Legislature has had thirty-five years to amend the armed robbery statute if it believed that Stewart did not comport with its intent. It has declined to do so.
It would be a great evil if questions once settled on full argument and mature deliberation were subject to be reopened and decided differently upon every change in the members of this court, and consequent changes in the temper and mental organism of the judges.... It is safe ... to say that the rule of stare decisis, so far as it relates to decisions of this court, should not be disregarded, except on the fullest conviction that the law has been settled wrong; and even then it is better to leave the correction to the legislature in all cases where a departure from it would have the effect to disturb vested rights.... In such cases, a departure from former rulings should never take place except upon the clearest necessity and the most assured conviction that the former ruling was erroneous.
Lombard v. Lombard, 57 Miss. 171 (1879).
¶ 64. Even if Stewart was wrongly decided, which it was not, any alleged error was certainly not pernicious, impracticable, or mischievous in its effect. Nor has any alleged error cause any harm or detriment to the public, much less any significant harm. Furthermore, the bench, bar, and defendants have come to rely on the interpretation of Section 97-3-79 as provided by Stewart. Last, the legislative silence for several decades on this issue renders the Stewart and Lee interpretations tacitly adopted, and thus incorporated into the statute. For these reasons, Stewart should not be disturbed even upon a find *1038 ing of error in its interpretation of Section 97-3-79.
KITCHENS AND CHANDLER, JJ„ JOIN THIS OPINION. DICKINSON, P.J., JOINS THIS OPINION IN PART.

. The State chose not to pursue a life sentence fixed by the jury. Miss.Code Ann. § 97-3-79 (Rev. 2014).

. The majority implies that the trial court considered Foster’s "lack of remorse,” despite the fact that the trial court never indicated it considered such. Maj. Op. ¶ 4. The majority, in either overzealous exaggeration or an apparent attempt to inflame readers, suggests that Foster exhibited no remorse because he "verbally and profanely” attacked the victim during the sentencing hearing. Maj. Op. ¶ 4. The majority’s suggestion mischaracterizes the exchange. We note that the victim admitted she did not see the robbers’ faces or really look at them closely during the less than two minutes they spent robbing the bank, and, while we certainly do not minimize her trauma, her physical injuries were not serious, consisting of some bruising and carpet burns, as well as "mental hurt” and "hurt feelings.” While Foster’s statements were certainly inadvisable, he was not attacking the victim, but making a protestation of innocence. The entire exchange, as opposed to the "modified” version presented by the majority, is as follows:
BY [THE VICTIM]: Your Honor, Mr. Foster, you have been a[sic] every [sic] present nightmare in my life since December 2 at 2:26 when you sailed over that cubby and knocked me out of my chair. Never in a million years would I think that anybody in as evil of a world that we live in could be so callous as to do what you did with no concern. You know, get your money. Get your money and leave. We’d have give [sic] you the money. You didn’t have to bully us and knock me out of my chair and give me nightmares since December the 2nd. Because of you, I locked myself up in my house for two weeks. I quit a job that I absolutely loved. I left people over there in Roxie that I absolutely loved because of you, but now I don’t have to worry about you anymore. I don’t have to look over my shoulder and wonder if this young man walking up with a hoodie on is you because I know where you’re going to be. I know where the other man that was with you is going to be for about 40 years, and I hope that's as long as you go with him. You got a lot of time to think about what you did. You didn't just hurt me. You hurt my family. You hurt my friends. You hurt our belief in people, and I am not going to let you do that anymore. You're done. As far *1027 as I am concerned, you’re done. I won’t ever have to worry about you again for as long as I live. Thank you.
BY THE COURT: Does the State have anything further?
BY MS. BLACKWELL: No, Your Honor.
BY THE COURT: Does the defendant have anything that ... he cares to say? Mr. Foster, you can make any statement to the Court you care to before sentencing, either yourself or through counsel, Mr. Beesley, or anyone else on your behalf.
BY THE DEFENDANT: Man, that lady don’t even know me from the man in the moon, and as far as Tyrone, I felt like he was baiting me in by calling me up there while I was serving him. Man, ain’t none of this is right. That lady don’t know me, and she’s sitting there placing all this on me, but she don’t even know me. She ain’t seen me nary a day of her life but today. Y’all convicting an innocent man. Y’all, I got three children out there, bro. I ain’t never done nary a robbery. I maybe done hurt somebody before, but, now, I ain’t never done naiy a robbery. Y'all sitting here convicting me over what a habitual offender say. That man is known to be robbery [sic]. I ain't got no robbery on me. Why you sit there, I done f* * *ed your life up. You f* * *ed your own life up.
BAILIFF ASHLEY: Hey, hey.
BY THE COURT: Just a second, sir—
BY A SPECTATOR: Twelve jurors convicted you.
BY THE COURT: Just a second—
BY A SPECTATOR: Twelve jurors convicted you.
BY THE DEFENDANT: She was talking to me.
BY THE COURT: Mr. Foster, you can continue with any statement you have to the Court.
BY THE DEFENDANT: Y’all get me on up out of here. Y’all convicting an innocent man.

. My colleagues in the majority, Justices Waller, Randolph, Lamar, and Pierce, publicly credit me and one of my Court of Appeals opinions, Long v. State, with supporting their application of a procedural bar in this case. That is inaccurate. Long is inapposite and inapplicable. I am concerned that my colleagues in the majority have either not fully read Long, or have conveniently misstated and misapplied Long. The same goes for the public credit they give to me for my opinion in Shumake v. Shumake, 147 So.3d 352 (Miss.2014). The majority represents that this "Court refused to consider an order which was not part of the record, stating that it would not consider as part of its analysis any information outside the record, even though it appeared that the Court of Appeals considered the order.” Maj. Op. ¶ 9. Actually, Shu-make presents the opposite situation to the one today. The order referred to was part of the trial court record, contrary to the majority’s intimation otherwise. In fact, the trial court entered the order, so it clearly and obviously considered it. The issue was that the parties failed to place the order in the appellate record, so this Court could not review that which was not before us. As explained below, Foster did present us with a life expectancy table, and this Court has held that we may take judicial notice of life expectancy tables. Thus, unlike in Shumake, this Court properly has before it the information it is asked to consider.

. Long is inapplicable on the merits, despite the majority’s intimation otherwise, as it noted that “this Court has held that when the Legislature has affixed a set term of years as the maximum sentence and has allowed that sentence to be imposed by a trial judge, as is the case here, the trial judge is not required to apply a term less than life in accordance with actuarial tables." Long v. State, 982 So.2d 1042, 1045 (Miss.Ct.App.2008) (emphasis added).

. Neither side offered any evidence as to Foster's life expectancy at the trial court level; however, the trial court found "no need to order a presentence investigation,” and proceeded with sentencing mere minutes after the jury returned its verdict.

. The Court of Appeals and the majority note that Foster’s codefendant, Donald Wilson, was likewise sentenced to forty years in prison, and that sentence was affirmed. Wilson was thirty-one at the time of his sentencing, and the life-span of a thirty-one year old non-Hispanic black male is 41.5 years. National Vital Statistics Reports, Vol. 59, No. 9, September 28, 2011, located at http://www.cdc.gov/ nchs/data/nvsr/nvsr5 9Aivsr59_09.pdf (last visited October 14, 2014). Wilson’s forty-year sentence was 1.5 years less than his life expectancy, and was thus ostensibly legal. Moreover, Wilson's sentence is neither relevant to Foster's life expectancy, nor before this Court. While certainly a trial court may consider the codefendant’s sentence in its analysis, it is not the only factor to consider, and the trial court must also consider a defendant’s life expectancy, something it failed to do in this case. Moreover, while the majority uses Wilson's sentence as a comparison, the record reveals that the trial court did not even consider it when sentencing Foster, which may only compound the trial court’s errors in sentencing.

. A thirty-five-year-old non-Hispanic black male has a life expectancy of 37.9 years. A thirty-five-year-old black male, including the black Hispanic population, has a life expectancy of 38.2 years. National Vital Statistics Reports, Vol. 59, No. 9, September 28, 2011, located at http://www.cdc.gov/nchs/data/nvsr/ nvsr59/nvsr59_09.pdf (last visited October 14, 2014).

. This is especially true when consulting an objective, reliable source for life expectancy, such as a government actuarial table, because *1032 it reduces the chance a court will arbitrarily fix an illegal sentence.

. As an example, in Foster’s age bracket of thirty-five to thirty-six years, if the average American’s life expectancy of 44.6 years was used, white females, Hispanic females, and Hispanic males would experience a boon, often of several years. National Vital Statistics Reports, Vol. 9, No. 9, September 28, 2011, located at http://www.cdc.gov/nchs/data/nvsr/ nvsr59/ nvsr59_09.pdf (last visited October 14, 2014) (Thirty-five-year-old non-Hispanic white females have a 46.8 year life expectancy; thirty-five-year-old Hispanic females have a 49.4 year life expectancy; and thirty-five-year-old Hispanic males have a 45.1 year life expectancy). Meanwhile, non-Hispanic white males and all non-Hispanic African Americans would be disparately impacted, often by several years. National Vital Statistics Reports, Vol. 9, No. 9, September 28, 2011, located at http://www.cdc.gov/nchs/data/nvsr/nvsr 59/nvsr59_09.pdf (last visited October 14, 2014) (Thirty-five-year-old non-Hispanic white males have a life expectancy of 42.7 years; thirty-five-year-old non-Hispanic black males have a life expectancy of 37.9 years; and thirty-five year old non-Hispanic black females have a life expectancy of 43.5 years). In addition, using such non-particularized, hugely sweeping averages such as the "average American” is likely to disproportionately harm Mississippians. See Death in the United States, 2010, NCHS Data Brief No. 99, July 2012, located at http://www.cdc.gov/nchs/ data/databriefs/db99.pdf (last visited October 14, 2014) ("Mississippi had the highest age-adjusted death rate in 2010 (961.9), 28.9 percent higher than the U.S. rate.”).

. Where is the line drawn? One hundred years? Three hundred? Five hundred? This argument creates a slippery slope and gives trial courts no upper sentencing limit, because this Court has held that "a sentence which does not exceed statutory limits is not cruel or unusual punishment.” Baker v. State, 394 So.2d 1376, 1378 (Miss.1981). Since the Special Concurrence argues the statute in question has no limit, it follows that any term of years is acceptable; yet, the Legislature clearly intended for non-jury sentences under Section 97-3-79 to have an upper limit. In a concurrence by Judge Posner, he notes that the effects of such a position "would be to empower the judge to make a term of years a heavier sentence than life imprisonment.” United States v. Prevatte, 66 F.3d 840, 846 (7th Cir.1995) (Posner, J., concurring) (citing Seventh, Sixth, and First Circuit cases that stand for the same proposition). "[A] judge could ... use a sentence to a term of years to imprison a defendant for his natural life, thus circumventing the requirement ... of a jury recommendation for a life sentence.” Id. If the judge “used a term of years to impose a life sentence he was evading a limitation on his authority.” Id. at 847.

is. On December 8, 1975, a Court composed of Justices Gillespie, Patterson, Rodgers, In-zer, Smith, Robertson, Sugg, Walker, and Broom unanimously decided that the proper interpretation of the rape statute, which provided that if a jury did not provide a life sentence, the court could fix the sentence for any term, was that only a jury may sentence a defendant to life, and in the absence of such a sentence, a judge has only the authority to sentence a defendant "to a definite term reasonably expected to be less than life.” Lee, 322 So.2d at 753.
On January 25, 1978, a Court composed of Justices Patterson, Inzer, Smith, Robertson, Sugg, Walker, Broom, Bowling, and Lee unanimously decided that the proper interpretation of the armed robbery statute, which provided that if a jury did not provide a life sentence, the court could fix the sentence for any term not less than three years, was that the court had the discretion to impose a life sentence even when the jury does not do so. McAdory, 354 So.2d at 266.
On May 2, 1979, a Court composed of Justices Patterson, Smith, Robertson, Sugg, Walker, Broom, Bowling, Lee, and Cofer unanimously decided that the proper interpretation of the armed robbery statute was that only a jury can sentence a defendant to life, and that, absent such a jury sentence, a judge has only the authority to sentence a defendant to a "definite term reasonably expected to be less than life,” overruling McA-dory. Stewart, 372 So.2d at 259.
Today, a Court composed of Justices Waller, Dickinson, Randolph, Lamar, Kitchens, Chandler, Pierce, King, and Coleman should not overrule Stewart and find that the proper interpretation of the armed robbery statute is that a judge has the authority to sentence a defendant to a term of years reasonably expected to be longer than that defendant’s life expectancy, effectively sentencing the defendant to life. If we abandon stare decisis today, nothing will stop the Court from again abandoning this new interpretation in a few years, once the composition of the Court has changed, or the current composition has changed its mind. This issue has already received much back and forth, and thus a thorough analysis of all sides of the issue, before it was settled thirty-five years ago. Subjecting it to more back and forth today, merely because of a change in the Court’s composition, is not prudent.